Irwin Duron CHERRY

v.

BIOMEDICAL APPLICATIONS OF PENNSYLVANIA, INC., National Medical Care, Inc. Long–Term and Short–Term Disability Insurance Plans, National Medical Care, Inc., Liberty Life Assurance Company of Boston

No. Civ.A. 05–4346.

United States District Court, E.D. Pennsylvania.

Nov. 8, 2005.

Joseph A. Hirsch, Hirsch and Hirsch, Wynnewood, PA, for Irwin Duron Cherry.

Erika B. Fisher, Littler Mendelson PC, Philadelphia, PA, Theodore A. Schroeder, Littler Mendelson, PC, Pittsburgh, PA, for Biomedical Applications of Pennsylvania, Inc., National Medical Care, Inc. Long–Term and Short–Term Disability Insurance Plans, National Medical Care, Inc., Liberty Life Assurance Company of Boston.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Via the motion now pending before this Court, Defendants, Bio–Medical Applications of Pennsylvania, Inc., National Medical Care, Inc. Long–Term and Short–Term Disability Insurance Plans,[1] and Liberty Life Assurance Company of Boston ("Defendants"), move to dismiss Plaintiff's First Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons outlined below, the motion shall be DENIED.

### Factual Background

Plaintiff Irwin Duron Cherry brings suit against Defendants for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").[2] Plaintiff's First Amended Complaint ("complaint") seeks recovery of benefits and declaratory judgment. Plaintiff was employed by Defendants Biomedical Applications of Pennsylvania, Inc. ("Biomedical") and National Medical Care, Inc. ("National") as a dialysis technician from approximately 2000 until the present. Plaintiff also holds a second job with RHD, Inc. ("RHD") as a residential advisor for disabled persons. Plaintiff participated in long-term and short-term disability plans offered by Biomedical and National, and

---

1. Defendants' motion indicates that the correct name of the plan is "The Fresenius Medical Care North America Short and Long Term Disability Plan," but does not assert a pleading defect on the basis of any confusion regarding the plan name.

2. Plaintiff originally filed state law claims against Defendants in the Court of Common Pleas of Philadelphia County. Defendants removed that suit to this Court and moved to dismiss based, *inter alia,* on ERISA's preemption of state law claims. In response, Plaintiff filed his First Amended Complaint setting forth claims under ERISA, thereby mooting Defendants' initial motion to dismiss and giving rise to the instant motion.

had insurance premiums deducted from his paycheck. Concurrently, Plaintiff participated in similar plans offered by RHD and had premiums deducted from his RHD paychecks for that coverage.

Plaintiff has been disabled and unable to work since January 23, 2003 as a result of throat cancer illness, treatment, and related complications. Plaintiff received short-term disability payments from Defendants beginning in February 2003. Plaintiff was approved for long-term benefits from Defendants on August 22, 2003, with benefits retroactively effective to July 19, 2003. Defendants' plan provided for benefits to be paid in the amount of 60% of Plaintiff's monthly pre-disability income based on his employment with Biomedical and National. Plaintiff similarly submitted claims and was approved for short-term, and subsequently long-term, disability benefits through RHD's plan. RHD's long-term benefits plan provided for benefits in the amount of 60% of Plaintiff's monthly pre-disability income based on his employment with RHD.

On September 18, 2003, Defendants notified Plaintiff that his disability benefits would be reduced by the amount of the benefits he was receiving from UNUM Provident based on his job with RHD.[3] Defendants' letter quoted a portion of the plan language regarding benefits offsets, and attached a single page of the plan containing offset provisions. By letter of October 17, 2003, Defendants requested reimbursement of overpayment based on previous benefits payments made at the full 60% rate. Plaintiff appealed this decision, and his appeal was denied.[4] After exhausting the appropriate administrative remedies, Plaintiff filed this suit.[5]

### Standards Governing Rule 12(b)(6) Motions to Dismiss

■ Generally speaking, in considering motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6), the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir.2000) (internal quotations omitted). *See also Ford v. Schering–Plough Corp.*, 145 F.3d 601, 604 (3d Cir.1998). A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted. *See, Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir.1997). The inquiry is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims. *In re Rockefeller Center Properties, Inc.*, 311 F.3d 198, 215 (3d Cir.2002). Dismissal is warranted only "if it is certain that no relief can be granted under any set of facts which could be proved." *Klein v. General Nutrition Companies, Inc.*, 186 F.3d 338, 342 (3d Cir.1999) (internal quotations omitted). It should be noted that courts are not re-

---

**3.** In addition to the issue of benefits reduction, Plaintiff alleges that his benefits were wrongfully terminated. Plaintiff acknowledges that the benefits were reinstated. Defendants' motion mentions this claim, but offers no argument regarding whether dismissal of that portion of the complaint is appropriate.

**4.** Plaintiff's First Amended Complaint alleges that correspondence from Defendants concerning offsets to Plaintiff's benefits did not contain explanations of Plaintiff's appellate rights under the plan. Plaintiff, however, seems to have taken the appropriate actions to appeal Defendants' determination, and apparently does not seek any remedy based on these alleged deficiencies.

**5.** Although Defendants' First Motion to Dismiss alleged a failure to exhaust administrative remedies, Defendants appear to have abandoned this argument.

quired to credit bald assertions or legal conclusions improperly alleged in the complaint and legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *In re Rockefeller*, 311 F.3d at 216. A court may, however, look beyond the complaint to extrinsic documents when the plaintiff's claims are based on those documents. *GSC Partners, CDO Fund v. Washington*, 368 F.3d 228, 236 (3d Cir.2004); *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426. *See Also, Angstadt v. Midd–West School District*, 377 F.3d 338, 342 (3d Cir.2004).

### *Discussion*

■ It is undisputed that Plaintiff receives long-term disability benefits as a result of his throat cancer and cancer treatment. Plaintiff alleges that Defendants wrongfully reduced these benefits. The essence of Plaintiff's claim is that Defendants wrongfully treated long-term disability benefits received through secondary employment as "benefits from other income" under the plan. Plaintiff claims that the language of the plan does not support this determination and the resulting offset against Plaintiff's benefits.[6]

Defendants initially relied on the language of the Summary Plan Description ("SPD") to support their motion to dismiss. According to Defendants' arguments, the plain language set forth in the SPD mandates offsets for "any payment ... from any other group disability plan." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pl.'s First Am. Compl. ("Pl.'s Resp.") at Ex. C.) Thus, Defendants argue, the plan administrators had no choice but

to reduce Plaintiff's benefits as a result of "benefits from other income" in the form of disability benefits from a second, separate employer. According to this theory, because actions in conformity with the "clear and unambiguous" terms of a plan simply cannot be considered "arbitrary and capricious," no claim for ERISA violation can arise from such actions.

Plaintiff, in turn, highlights discrepancies between the language of the SPD and the plan language quoted in the September 18, 2003 benefits determination letter. (Pl.'s First Am. Compl. at Ex. A, C.) The plan language, as provided to Plaintiff in and attached to the letter of September 18, 2003, includes "any other typical Long Term Disability Offsets not specified herein" within the definition of other benefits resulting in offsets. (Pl.'s First Am. Compl. at Ex. C.) It does not, however, specifically mention benefits received from plans other than those provided by Defendants.

In response, Defendants shift tactics, asserting an entirely new reason for their determination—the language of a different plan than that quoted in the September 18, 2003 determination letter. Despite (or perhaps because of) their argument that "clear and unambiguous" terms of the plan mandate an offset, Defendants fail to acknowledge, much less resolve, the differences among the two plans and the SPD. Defendants fail to establish what plan language was actually effective at any time relevant to Plaintiff's claim for benefits. Analysis of the competing versions reveals that the applicable plan language is hardly clear and unambiguous.

---

**6.** The appropriate standard of review for Defendants' benefits determination has not yet been established, and that question is not properly before this Court at this time. The Court, however, finds that the standard of review has no impact on the analysis herein because Plaintiff's claims withstand a Rule 12(b)(6) motion even under the restrictive "arbitrary and capricious" standard of review.

**Impact of the September 1, 2003 Plan**

Defendants rely on a different plan than that used in making the decision to reduce Plaintiff's benefits. It is not entirely clear what weight, if any, should be given to newly-asserted reasons for a benefits determination. *See Doyle v. Nationwide Insurance Co. & Affiliates Employee Health Care Plan,* 240 F.Supp.2d 328, 347 (E.D.Pa.2003) (citing *Skretvedt v. E.I. DuPont de Nemours and Co.,* 268, F.3d 167, 178 n. 8 (3d Cir.2001)).[7] This Court need not, however, determine whether such *post hoc* reasoning is permissible or persuasive because the plan now proffered by Defendants as justification for the benefits determination does not apply to Plaintiff's claims.

Defendants' do not dispute that the September 18, 2003 benefits determination letter relied on, quoted, and included a copy of a plan provision entitled "Benefits from Other Income." (Pl.'s Resp. Ex. C.) The attached page of the plan is labeled at the bottom "Effective January 1, 2002." *Id.* The letter referred Plaintiff to the segments of the attached provision applied to his benefits by quoting the plan language as follows:

Benefits from Other Income

Benefits from Other Income means those benefits shown below:

6. Any other typical Long Term Disability Offsets not specified herein.

Those Benefits from Other Income, except Retirement Benefits, must be payable as a result of the same Disability for which the Sponsor pays a benefit.

*Id.* The version of the plan attached to Defendants' reply contains identical language in the sixth part of that version's definition of "benefits from other income." (Defs.' Reply to Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pl.'s First Am. Compl. ("Defs.' Reply") Ex. B. at 14)

Defendants, however, now rely on another portion of the definition, which includes

(b) The amount of any disability benefits which the Covered Person is eligible to receive under:

(I) any other group plan; ...

*Id.* This language is significantly different from that in the portion of the plan quoted in and attached to the benefits determination letter. The corresponding provision in that version of the plan includes

2. The amount of any disability benefits which the Covered Person is eligible to receive under:

a. any other group plan *of the Sponsor;* ...

(Pl.'s Resp. Ex. C) (emphasis added).

If identical language existed in both versions of the plan, it might be conceivable that Defendants merely cited a newer version of the plan inadvertently. The disparities between the two versions, however, suggest that Defendants' argument is that the newer plan should have been applied in making the September 2003 determination to reduce Plaintiff's benefits, and should apply to Plaintiff's claim going forward.

As noted above, there are serious doubts as to whether such new justifications for a benefits determination may be considered at all. Here, even if the newly asserted reasons had been articulated at the time the determination was made, they would not support a motion to dismiss because the plan on which Defendants rely simply does not apply to Plaintiff's benefit claim. A plan can hardly provide a clear and

---

7. The policies underlying ERISA dictate a strong preference for requiring clearly articulated reasons for determinations. Some courts have implemented this policy by pre-

cluding such newly-asserted reasons for benefit decisions under an estoppel type analysis. *Doyle,* 240 F.Supp.2d at 347 (citing *Skretvedt,* 268 F.3d at 178 n. 8).

unambiguous requirement for action by the administrator where that plan is inapplicable to the claim being considered.

The newly-proffered plan was not enacted until *after* Plaintiff's claim for benefits was submitted and approved. Plaintiff's long-term disability benefits were approved on August 22, 2003. The partial copy of the plan attached to Defendants' Reply is titled "Fresenius Medical Care North America Short and Long Term Disability Plan as Amended and Restated Effective September 1, 2003." (Defs.' Reply Ex. B.) This plan's "Introduction" states that

> [National] previously established [this plan] on January 1, 1985 for the benefit of its employees who elect to participate in the Plan. The Plan has been amended from time to time. The Plan was amended and restated effective January 1, 1999. [National] desires to amend the Plan in several respects and therefore, the Plan is hereby amended and restated as hereinafter set forth, effective September 1, 2003, unless specifically stated otherwise.

*Id.* Thus, based on the language of the plan, that version was not effective until September 1, 2003—over a week after Plaintiff's claim was approved, and long after the onset of the disabling condition giving rise to his claim.[8]

The benefits determination letter of September 18, 2003 relied solely on language of the older plan. That Defendants did not actually apply the September 1, 2003 plan in deciding to reduce Plaintiff's benefits further supports the conclusion that the newer plan has no impact whatsoever on Plaintiff's claim. This result is consistent with the general policy that only the plan in effect at the time a claim for benefits arises should be applied when making a benefits determination. *See Confer v. Custom Engineering Company*, 952 F.2d 41, 43 (3d Cir.1991) (finding that right to benefits vested at the time of the accident giving rise to the claim for benefits, and that informal announcements that certain types of events would be excluded from coverage were ineffective to exclude plaintiff's claim from coverage under the plan); *see also Smathers v. Multi–Tool, Inc.*, 298 F.3d 191, 195 (3d Cir.2002) (interpreting *Confer* as holding that a plan amendment cannot be retroactively applied where the events giving rise to the claim occurred while an earlier version of the plan was in effect).

Defendants followed this principal in the September 18, 2003 determination by applying the older plan. Defendants knew on September 18, 2003 that reliance on the September 1, 2003 plan was incorrect. They cannot now attempt to impose the terms of a plan which they know was never properly applicable to Plaintiff's claim.

### Impact of the January 1, 2002 Plan

The conclusion that the September 1, 2003 plan does not apply to Plaintiff's benefit claim does not fully resolve the question of whether the plan properly applicable to Plaintiff's claim contains language clearly directing an offset for benefits received through secondary employment. The plan language relied on in the September 18, 2003 benefits determination letter hardly provides a clear mandate to offset benefits from secondary employment by including "any other typical" offsets. Although it is possible that an offset for

---

**8.** The September 1, 2003 start date for the new version of the plan is reiterated in the affidavit of Jeffrey Hunter, which notes that "[t]he excerpts attached as Exhibit B reflect the terms of the Plan applicable from September 1, 2003 to the present." (Defs.' Reply Ex. A.)

secondary employment is typical, the broad language of the plan does not provide the type of specific instruction necessary to support dismissal under the theory set forth by Defendants.

### Impact of the Summary Plan Description

Defendants' reliance on the language of the SPD as providing a clear mandate forces us to go still further in our analysis. Defendants' seem to argue that the SPD must be treated as modifying the terms of the plan to create a specific offset for benefits received through other employment. This argument is presented as if the SPD states the terms of the plan, without offering any legal support for the ability to limit rights under a plan through a summary plan description. Defendants merely assert that Plaintiff's reliance on the SPD in setting out his ERISA claims essentially binds Plaintiff to all the terms of that document.[9] (Defs.' Reply at 2.)

■ Defendants further argue that the language of the SPD is consistent with and confirmed by the "Plan document." *Id.* The SPD language indeed reflects the language of the "Plan document" in specifying that benefits received "from any other group disability plan" shall be offset. (Pl.'s First Am. Compl. Ex. A at 4–5.) The referenced "Plan document," however, is merely the September 1, 2003 version of the plan which, as discussed above, has no bearing on Plaintiff's claim for benefits. (Defs.' Reply at 2.) Thus, the conformity of the SPD to the September 1, 2003 plan offers no evidence as to the SPD's effect, if any, on the plan in place at the time of Plaintiff's claim for benefits.[10]

Regardless of its relationship—or lack thereof—with the amended plan, the SPD does not create a clear mandate for an offset of benefits received through other employment. A summary plan description may be treated as amending a plan to the extent that it creates *additional* rights or coverage for plan participants. *See, e.g., Burstein v. Retirement Account Plan for Employees of Allegheny Health Education and Research Foundation,* 334 F.3d 365, 368 (3d Cir.2003) (holding that where terms of a summary plan description and the plan itself conflict, "a plan participant may nevertheless state a claim for plan benefits based upon terms contained in the summary plan description").

This concept has not, however, been extended to allow administrators to rely on summary plan descriptions that *reduce* the rights or coverage of participants under the plan. *See Andersen v. Chrysler Corporation,* 99 F.3d 846, 858 (7th Cir.1996) (declining to enforce terms of a summary plan description to the extent that they were more detrimental than the terms of the plan); *Clark v. The Bank of New York,* 801 F.Supp. 1182, 1190 (S.D.N.Y.1992) (finding that "no court has found that a plan summary can expand the plan administrator's authority"). Because the SPD cannot effectively change the plan in a manner detrimental to participants' rights, the SPD cannot, by itself, create a clear and unambiguous requirement for an offset of benefits received through other em-

---

9. Defendants present Plaintiff's inclusion of the SPD with his complaint as Plaintiff's admission that the contents of the SPD are "representative of the terms of the Plan." Plaintiff's First Amended Complaint makes no such representation regarding the attached SPD, nor does it rely on any of the terms therein.

10. It is not clear when the SPD was written, published, or provided. For the purposes of this motion, the Court assumes that the SPD was created to summarize the plan in effect at the time of Plaintiff's claim for benefits (rather than one created to reflect the September 1, 2003 plan).

ployment when no such clear mandate existed in the plan. In the absence of the claimed "clear and unambiguous" requirement for an offset against Plaintiff's benefits, Defendants' arguments for dismissal fail.

For all of the reasons set forth above, Defendant's motion to dismiss is denied pursuant to the attached order.

## ORDER

AND NOW, this 8th day of November, 2005, upon consideration of the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Docs. No. 7 and 8), and all responses thereto (Docs. No. 9, 11, and 12), it is hereby ORDERED that the motion is DENIED.