**Rosann DELSO, Individually and As Executor of The Estate of James Delso, Appellant**

v.

**TRUSTEES OF the RETIREMENT PLAN FOR the HOURLY EMPLOY-EES OF MERCK & CO., INC.**

No. 08–3474.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 23, 2009.

Opinion Filed: July 7, 2009.

Richard E. Shapiro, Esq., Princeton, NJ, for Appellant.

Randi F. Knepper, Esq., McElroy, Deutsch, Mulvaney & Carpenter, Morris-town, NJ, for Appellee.

Before: BARRY, SMITH, Circuit Judges, and RESTANI,* Judge.

## OPINION

BARRY, Circuit Judge.

Rosann Delso appeals the order of the District Court granting summary judgment in favor of an ERISA plan administrator on her claim, brought pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover retirement benefits allegedly owed to her deceased husband. Because the plan administrator's decision to deny the application for benefits was not an abuse of discretion on the undisputed facts before it, we will affirm the order of the District Court.

## I.

James Delso was an hourly employee at Merck & Co. when he died suddenly on December 26, 2002, at 6:14 A.M. On December 24, 2002, while hospitalized, Mr. Delso had signed a letter-application declaring his intention to go on disability retirement immediately and requesting a lump sum payment of his pension under the Retirement Plan for the Hourly Employees of Merck & Co. (the "Plan"), an ERISA–governed plan. Guy Fleming, Mr. Delso's union representative, delivered the application to Merck Human Resources on December 26, 2002 at 4:25 P.M., after Mr. Delso's death.

The Plan is silent as to the procedure by which a participant makes an application for retirement benefits, but the summary plan description provides:

> Your completed retirement application (including all required consents [1]) must be delivered to Employee Services, or

any other employee or department designated by the Hourly Pension Committee, while you are still alive and prior to your termination of employment. (App. at 284.)

The Plan is administered by the Hourly Pension Committee (the "Committee"), which is vested with "all powers necessary for the supervision and administration of the operation of this Plan" including the power to "enact such rules and regulations consistent with this Plan as it may consider desirable for the conduct of its business and for the administration of this Plan." (App. at 99.) The Plan also grants the Committee the authority "to construe this entire Plan, its construction thereof to be final and conclusive," and "to determine all questions affecting eligibility of any Employee to participate in this Plan." *Id.*

Long prior to Mr. Delso's death, the Committee (including Mr. Fleming, a Committee member) had debated the issue of delivery and receipt of disability retirement benefits applications, and, in 1997, the Committee passed a resolution as to which forms of receipt would be acceptable for an application to be considered "received by the Company." The following methods were deemed acceptable: (1) receipt by Employee Services prior to the employee's death by mail, delivery, or fax (three fax numbers were agreed upon), (2) U.S. Postal Service mail to Employee Services, postmarked prior to death, and (3) receipt by a Human Resources person designated at a site to accept receipt of the applications, prior to death.

On March 6, 2003, the Committee denied Mr. Delso's application (now pursued by

---

* Honorable Jane A. Restani, Chief Judge, U.S. Court of International Trade, sitting by designation.

1. In order to receive a lump sum payment of retirement benefits, spousal consent must also be delivered to the company as part of the application. It is undisputed that Mr. Delso's application did not include this required consent.

Mrs. Delso) because it was not received by the company prior to his death. Mrs. Delso appealed, asking the Committee to reconsider and arguing that, because of the Christmas holiday, she had no way to contact the company prior to her husband's death and that she had done all she could do. The Committee denied the appeal on June 12, 2003.

Mrs. Delso then filed suit in the District Court pursuant to ERISA's civil enforcement provision in 29 U.S.C. § 1132(a)(1)(B). On July 25, 2008, after declining to utilize a heightened standard of review and concluding that the Committee did not act arbitrarily and capriciously in denying the claim given the undisputed fact that the application was not delivered to the company prior to Mr. Delso's death, the District Court granted summary judgment. Mrs. Delso now appeals.

## II.

■ The District Court had jurisdiction pursuant to 29 U.S.C. § 1132(e)(1), and we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the Court's legal conclusions is plenary, and we apply the same standard of review that the Court should have applied. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522 (3d Cir.2009). As the parties recognize, the Supreme Court recently clarified the standard of review for cases brought pursuant to 29 U.S.C. § 1132(a)(1)(B) in *Metropolitan Life Insurance Co. v. Glenn*, — U.S. —, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), and we have adjusted our standard of review accordingly. *See Schwing*, 562 F.3d at 525. This slight clarification in the ERISA review framework does not significantly impact our review in this case.

Mrs. Delso argues that the "receipt requirement," that is, the requirement that an application for retirement benefits be received by Merck prior to an employee's death, was unenforceable because it was contained in the summary plan description and not in the Plan itself and because it constituted an unreasonable interpretation of the Plan.

■ ERISA requires plan administrators to furnish a "summary plan description" ("SPD") to all participants and beneficiaries. 29 U.S.C. § 1022(a). The SPD must contain basic information about the plan, including, "the procedures to be followed in presenting claims for benefits under the plan." 29 U.S.C. § 1022(b). Written plan documents and SPDs are "the statutorily established means of informing participants and beneficiaries of the terms of their plan and its benefits." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 58 F.3d 896, 902 (3d Cir.1995).

■ We need not decide whether the SPD in this case should be considered as part of the "documents and instruments governing the plan" that ERISA fiduciaries are required to follow, *see* 29 U.S.C. § 1104(a)(1)(D), because, regardless of how we characterize the receipt requirement, the Committee did not abuse its discretion by imposing it: the Plan explicitly granted the Committee the authority to create such a requirement and the requirement is not an unreasonable interpretation of the Plan.

■ As discussed above, the Plan provides that the Committee is to have "all powers necessary for the supervision and administration of the operation of this Plan" including the power to enact rules and regulations desirable for administration of the Plan and the authority to construe the terms of the Plan. When a plan administrator is granted such broad authority to interpret an ERISA plan, "we will disturb its interpretation only if its reading of the plan documents was unreasonable." *Moench v. Robertson*, 62 F.3d

553, 566 (3d Cir.1995); *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In this case, the interpretation was reasonable: the Committee has consistently applied the receipt requirement[2], it does not conflict with the Plan, and it is consistent with both the Plan and ERISA's statutory provisions. *See Moench,* 62 F.3d at 566.

Mrs. Delso argues that the receipt requirement constitutes an unreasonable interpretation of the Plan because it conflicts with the main Plan document and constitutes an impermissible "reduction of rights and benefits." *See Cherry v. Biomedical Applications of Pa., Inc.,* 397 F.Supp.2d 609, 615 (E.D.Pa.2005) (holding that "[an SPD] may be treated as amending a plan to the extent that it creates *additional* rights or coverage," but not when it reduces the rights or coverage available under the plan (emphasis in original)). In cases where an SPD conflicts with a main plan document, we ordinarily enforce the terms of the SPD. *Burstein v. Ret. Account Plan for Employees of Allegheny Health Educ. and Research Found.,* 334 F.3d 365, 381 (3d Cir.2003). As the District Court correctly concluded, however, the SPD in this case does not conflict with the main Plan document, which is silent as to how applications may be presented to the company. And unlike in the cases cited by Mrs. Delso, the language of the SPD in this case does not constitute a reduction of rights or benefits; it merely sets forth the procedures to be followed for presentation of a claim, as it is required to do by statute.

Having established that the Committee's receipt requirement constitutes a reasonable interpretation of the Plan, we must consider whether the application and required spousal consent were delivered while Mr. Delso was still alive. It is undisputed that, prior to his application, the Committee resolved to interpret "delivered" to mean any of four methods, including fax and mail by postmark, and Mrs. Delso has not argued that these methods are unreasonable. It is also undisputed that Mr. Delso's application and the required spousal consent were not delivered by any of these methods prior to his death. Therefore, the Committee did not abuse its discretion when it denied his claim. This conclusion, we note, does not change even were we to consider, as additional factors, Mrs. Delso's allegations of conflict of interest, bias, and procedural irregularity. *See Schwing* 562 F.3d at 525.

## III.

For the reasons stated above, we will affirm the order of the District Court.

---

**2.** Mrs. Delso argues that the Committee has applied the receipt requirement inconsistently, a contention that is belied by the record. The only arguably inconsistent case she cites in which benefits were granted by the Committee is a case where receipt occurred after the employee's death was decided long before the Committee's 1997 resolution and involved the error of a messenger. This one instance is hardly sufficient to demonstrate inconsistent decisionmaking, particularly when the other cases discovered by Mrs. Delso evidence the Committee's even-handed and consistent application of the receipt requirement. Moreover, we have held that arguments regarding similarly situated employees "should be given minimal, if any, weight" in claims determinations, because the fact that administrators may have, in the past, erroneously granted benefits under an ERISA plan does not mean that they are bound in "a straightjacket requiring them to do so forever." *Vitale v. Latrobe Area Hosp.,* 420 F.3d 278, 286 (3d Cir.2005).