

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-29-2005

# Vitale v. Latrobe Area Hosp

Precedential or Non-Precedential: Precedential

Docket No. 04-3243

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Vitale v. Latrobe Area Hosp" (2005). *2005 Decisions.* Paper 581.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/581

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3243

———

JOYCE VITALE

v.

LATROBE AREA HOSPITAL,

*Appellant*

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civ. No. 03-1117)
District Judge: The Honorable Gary L. Lancaster

———

Argued: July 11, 2005

Before: ALITO and BECKER, *Circuit Judges*, and SHADUR,
*District Judge.*[*]

(Filed August 29, 2005 )

TERRENCE H. MURPHY
WILLIAM M. HASSAN (ARGUED)
Klett Rooney Lieber & Schorling
One Oxford Centre, 40th Floor

---

[*]The Honorable Milton I. Shadur, United States District Judge for
the Northern District of Illinois, sitting by designation.

Pittsburgh, PA 15219
*Attorneys for Appellant*

JOHN E. QUINN (ARGUED)
SHARON J. NEWBRANDER
Evans Portnoy Quinn & O'Connor
1 Oxford Centre, 36th Floor
301 Grant Street
Pittsburgh, PA 15219
*Attorneys for Appellee*

---

OPINION OF THE COURT

---

BECKER, *Circuit Judge*.

Latrobe Area Hospital ("Latrobe") appeals from a judgment against it in a dispute over ERISA retirement benefits.[1] Latrobe denied early retirement benefits to plaintiff Joyce Vitale after determining that, because she was on long-term disability leave, she was not accruing benefits and so did not qualify for the early retirement incentive under the terms of the plan. After a bench trial, the District Court ruled in favor of Vitale, finding that Latrobe's decision to deny benefits was arbitrary and capricious. The District Court relied on the fact that two other employees, who were out on short-term disability leave at the relevant time, had received early retirement benefits; the Court determined that these other employees were similarly situated to Vitale and that the decision to deny her benefits was therefore arbitrary and capricious.

We will reverse. The plain language of Latrobe's retirement plan required Latrobe to deny benefits to Vitale. And its decision to do so, while granting benefits to two employees in what we find to be distinguishable circumstances, was not arbitrary and

---

[1]Latrobe's retirement plan is governed by provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").

2

capricious.

## I. Facts and Procedural History

Vitale worked as a food service aide at Latrobe until July 1, 1999, when she was severely injured in a car accident. Latrobe offers its employees ninety days of short-term disability leave, and Vitale used her full allowance. When this expired in September 1999, she went on long-term disability leave.

On February 28, 2000, Latrobe adopted an amendment to its ERISA retirement plan ("the Plan") to encourage early retirement. Under the amendment, early retirement benefits would be paid out of the Plan, which was then overfunded, allowing the hospital to reduce staffing costs, which are paid out of operating funds. In discussions prior to adopting the new benefit, the hospital decided that employees on long-term disability leave would not be eligible, because encouraging them to retire early would not achieve the goal of reducing active staff. On the other hand, employees on short-term disability leave would be eligible, because they still had an open position at the hospital. The language of the incentive plan, as it was adopted, allowed employees "currently accruing a benefit" and meeting other requirements to receive early retirement.

Vitale applied for early retirement in April 2000, while she was on long-term disability leave. She was informed that she had been denied benefits because, being on long-term disability leave, she was not "actively employed" at the time. Vitale was terminated from her job on August 6, 2000, because her employment had been "inactive" for twelve months.

She then brought this suit under 29 U.S.C. § 1132(a)(1)(B), alleging that Latrobe's denial of benefits was arbitrary and capricious. As evidence, she pointed to the fact that two other employees, Donna McCullough and Margaret Sommerville, were awarded early retirement benefits under the Plan even though they too were out on medical leave. Vitale argued that McCullough and Sommerville were similarly situated employees, and that it was arbitrary and capricious of Latrobe to grant them benefits while denying the same benefits to her. Latrobe's response was that McCullough and Sommerville, who were on short-term disability leave protected by the Family and Medical Leave Act of 1993, 29

U.S.C. § 2601 *et seq.* ("FMLA"), were not similarly situated to Vitale.

After a bench trial in July 2004, the District Court filed an opinion and order finding that the denial was arbitrary and capricious, and requiring Latrobe to award Vitale benefits under the Plan. Latrobe timely appealed.

## II. Jurisdiction

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. This Court has appellate jurisdiction over the final judgment of the District Court under 28 U.S.C. § 1291.

Although the District Court's order did not specifically fix damages, instead referring the matter to Latrobe for calculation of benefits, it is nonetheless a final judgment subject to appellate review. In general, "[a] finding of liability that does not also specify damages is not a final decision." *Marshak v. Treadwell*, 240 F.3d 184, 190 (3d Cir. 2001). However, the "practical finality rule . . . permits appellate review of an order that is not technically final but resolves all issues that are not purely ministerial." *Id.* We have elaborated on this standard, stating that

> even when a judgment fails to fix the amount of damages, if the determination of damages will be mechanical and uncontroversial, so that the issues the defendant wants to appeal before that determination is made are very unlikely to be mooted or altered by it—in legal jargon, if only a "ministerial" task remains for the district court to perform—then immediate appeal is allowed.

*Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 201 n.8 (3d Cir. 2004) (quoting *Prod. & Maint. Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1401 (7th Cir. 1992) (internal quotation marks omitted)).

This case is closely analogous to *Skretvedt*. The parties agree that the benefits calculation required by the District Court would be entirely mechanical: the Plan contains a precise mathematical formula for calculating the monthly retirement benefit, and the inputs to the formula are all undisputed facts. As

4

the only remaining issues remaining before the District Court were "purely ministerial," we have jurisdiction over Latrobe's appeal.

## III. Standard of Review

Our standard of appellate review is straightforward. In an appeal from an ERISA bench trial, we review findings of fact for clear error but have plenary review over the District Court's conclusions of law. *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004). The parties dispute, however, the proper standard of judicial review to be applied to the Plan administrator's decision to deny benefits. The District Court employed a "slightly heightened level of scrutiny under the touchstone arbitrary and capricious standard of review." Latrobe contends that this was error, and that the normal arbitrary and capricious standard applies.

Courts review a denial of ERISA benefits *de novo* unless the plan documents give the administrator discretionary authority to determine eligibility or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where, as here, the plan gives the administrator discretionary authority, we review the administrator's exercise of that authority under an "arbitrary and capricious" standard, and the administrator's decision "will be overturned only if it is 'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 41 (3d Cir. 1993)).

In certain cases, however, we have applied a heightened standard of review. The leading case is *Pinto v. Reliance Standard Life Insurance Co.*, 214 F.3d 377 (3d Cir. 2000), in which we considered plan administrators' possible conflicts of interest. To address those conflicts, we employ "heightened scrutiny . . . when an insurance company is both plan administrator and funder." *Id.* at 387. The District Court interpreted *Pinto* and its progeny to mean that any fiduciary who both administers and funds a plan operates under a conflict of interest and is therefore subject to a heightened standard of review.

In *Pinto*, however, we specifically distinguished *insurance companies* that both administer and fund plans from

*employers* who perform those roles. Insurance companies pay plan benefits out of funds that would otherwise be available as profits, creating a direct incentive for them to withhold benefits. *See Pinto*, 214 F.3d at 388. In contrast,

> the typical employer-funded pension plan is set up to be actuarially grounded, with the company making fixed contributions to the pension fund, and a provision requiring that the money paid into the fund may be used only for maintaining the fund and paying out pensions. As we explained in *Abnathya* and *Mitchell*, the employer in such a circumstance "incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits."

*Id.* (quoting *Abnathya*, 2 F.3d at 45 n.5, and *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 n.4 (3d Cir. 1997)). Furthermore, employer fiduciaries have "incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits," *Nazay v. Miller*, 949 F.2d 1323, 1335 (3d Cir. 1991); these incentives are absent, or at least attenuated, when an insurer serves as an ERISA fiduciary.

We have therefore repeatedly stated that a typical employer-funded ERISA benefits plan does not create the sort of conflicts of interest that demand a heightened arbitrary and capricious review. *See, e.g., Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley*, 248 F.3d 206, 216-17 (3d Cir. 2001); *Pinto*, 214 F.3d at 383; *Abnathya*, 2 F.3d at 45 & n.5. As Latrobe both administers and funds its own pension plan, it falls squarely within the rule of these cases.

That said, we hasten to observe that an employer-fiduciary may be subject to a conflict of interest requiring heightened scrutiny when its plan is "unfunded," that is, when it pays benefits out of operating funds rather than from a separate ERISA trust fund. *See Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 197-98 (3d Cir. 2002); *Stratton v. E.I. DuPont de Nemours & Co.*, 363 F.3d

6

250, 254-55 (3d Cir. 2004).[2] But Latrobe's Plan is "funded": benefits are paid out of a separate trust fund, and Latrobe's contributions to the fund are determined by an actuarial formula and are not directly influenced by individual benefits decisions. In fact, at the relevant times, the Plan was significantly overfunded.

There are other circumstances in which a heightened standard of review of employer-funded plans will be appropriate. For example, "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits" can trigger a heightened standard of review. *Kosiba*, 384 F.3d at 66. There is no evidence of procedural irregularity or bias here. The Plan at issue here is a typical employer-funded ERISA plan subject only to arbitrary and capricious review. It was therefore error for the District Court to employ a heightened level of review.

## IV. Analysis

### A. The Plan Language

The early retirement incentive at issue here is found in Section 4.10 of the Plan, entitled "Voluntary Early Retirement Incentive Program." It allowed "[a]ny eligible Participant or Retired Participant" to elect to retire under the incentive program if he or she elected to do so between March 15 and April 30, 2000. The eligibility requirements, found in Section 4.10(a)(i)-(iv), included (i) that "the Participant is currently accruing a benefit under the Plan and was not receiving Monthly Retirement Income payments from this Plan by reason of retirement prior to January 1, 2000," (ii) that the participant was at least 58 years old, (iii) that he or she had at least 75 years combined age and credited service, and (iv) that he or she was not a physician. It is undisputed that Vitale

---

[2]Vitale seems to read *Stratton* for the proposition that a "sophistication imbalance" between the parties may lead to heightened scrutiny. *Stratton* did apply the *Pinto* sliding scale analysis, which includes an inquiry into sophistication imbalances, to determine what level of heightened scrutiny was appropriate, but did so there because the DuPont plan's unfunded status rendered *some* level of heightened arbitrary and capricious review necessary. *See Stratton*, 363 F.3d at 254-55.

met criteria (ii) through (iv).

It is also undisputed, however, that Vitale was ineligible for the early retirement benefit under the first criterion, which limits eligibility to those employees who are "currently accruing a benefit" under the Plan. The parties and the District Court all agreed that Vitale was not "currently accruing a benefit" at the relevant time, because she was out of work on long-term disability leave.[3] Nor has either party suggested any reading of the Plan that does not require an employee to be "currently accruing a benefit" in order to be eligible. Because the clear and unambiguous terms of the Plan allow Latrobe to provide early retirement only to those employees who are currently accruing benefits, and because Vitale has conceded that she was not currently accruing a benefit when she applied for early retirement, it was not arbitrary and capricious for Latrobe to deny her early retirement.

Indeed, had Latrobe granted Vitale's request for early retirement, it would have been in violation of its fiduciary duty to administer the Plan according to its terms. Latrobe was obligated by statute to administer the plan "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). "An award inconsistent with the plan's valid provisions would be a breach of [an administrator's fiduciary] duties. . . . 'An administrator who strictly adheres to the lawful terms of an employee benefit plan may not be found to have acted arbitrarily and capriciously.'" *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 286 (3d Cir. 1988) (quoting *Foltz v. U.S. News & World Report*, 613 F. Supp. 634, 639 (D.D.C. 1985)).

## B. Similarly Situated Employees

Nonetheless, Vitale argues that Latrobe acted arbitrarily and

---

[3]While the meaning of "currently accruing a benefit" is not completely clear, the Plan contains an "Accrued Benefit Formula" under which retirement income is based on average monthly earnings and years of credited service. The parties represented at oral argument that a participant accrues benefits by performing credited service, i.e., by working full-time at Latrobe, and this comports with our reading of the Plan. Thus, because Vitale was not actively working during her disability leave, she was not "accruing a benefit."

capriciously in that it granted benefits to two similarly situated employees, McCullough and Sommerville, while denying benefits to her. The District Court accepted this argument in ruling for Vitale. The parties agree that McCullough and Sommerville, like Vitale, were not actively accruing benefits when they were granted early retirement.

### 1. Can We Look to Similarly Situated Employees Despite the Clear Plan Language?

Neither Vitale nor the District Court has explained why Latrobe's asserted errors in administering the Plan as to McCullough and Sommerville should require it to make similar errors in administering the Plan as to Vitale.[4] And Vitale has cited no case holding that an employee who is unambiguously ineligible for a benefit under the terms of an ERISA plan can nonetheless receive that benefit because the administrator granted it to other ineligible participants.

Indeed, if Vitale is correct that McCullough and Sommerville were ineligible for early retirement benefits, her cause of action would appear to be under 29 U.S.C. § 1132(a)(3), which allows a participant to sue to enforce the terms of the plan. The remedy under such a suit would presumably be for Latrobe, as the Plan's fiduciary, to compensate the Plan for amounts paid out incorrectly, not for the Plan to pay out additional money to Vitale. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262-63 (1993); Steven J. Sacher et al., *Employee Benefits Law* 903-04 (2d ed. 2000). Vitale's theory seems to be, however, that if Latrobe made a mistake in granting benefits to some employees, it must continue

---

[4]In particular, Vitale has *not* argued that Latrobe's grant of benefits to McCullough and Sommerville is evidence that the phrase "currently accruing a benefit" means something other than "currently actively employed," or that Latrobe's interpretation of that requirement was incorrect. Instead, Vitale has conceded that she did not meet that requirement. Nor has she advanced any argument of estoppel, *see, e.g.*, *Cleary v. Graphic Communications Int'l Union Supplemental Ret. & Disability Fund*, 841 F.2d 444, 447-49 (1st Cir. 1988), or of reasonable expectations, *see, e.g.*, *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 387 (9th Cir. 1994).

to repeat that mistake: if one employee wrongfully gets benefits, so must everyone else. We reject this theory: the payment of benefits to other allegedly ineligible employees does not by itself give another ineligible employee a cause of action for benefits under 29 U.S.C. § 1132(a)(1)(B).

We addressed a similar contention in *Foley v. International Brotherhood of Electrical Workers Local Union 98 Pension Fund*, 271 F.3d 551 (3d Cir. 2001). Foley was denied certain benefits because he failed to meet eligibility requirements; he sued, claiming that the administrators had improperly denied him an exception from those requirements. The district court found that the decision to deny the exception was arbitrary and capricious because other employees had been granted the exception. We reversed, chiding the district court for "focusing on the fact that credit under the . . . exception had been granted liberally in the past rather than examining whether the Trustees' decision was contrary to Plan language or whether it was rationally related to a legitimate Plan purpose." *Id*. at 558. We also pointed out that "the district court's holding binds the Trustees to a result that was a consequence of poor administrative practices, that the Trustees later corrected. In effect, the district court's decision improperly 'straightjackets' the Trustees into granting benefits simply because of their past practices." *Id*.; *see also Nazay*, 949 F.2d at 1336 (finding that a plan administrator's refusal to waive a plan requirement was not arbitrary and capricious).

Other courts have dealt with similar claims. In *Cleary v. Graphic Communications International Union Supplemental Retirement & Disability Fund*, 841 F.2d 444 (1st Cir. 1988), the First Circuit considered the claims of plan participants for supplemental benefits. These participants had attempted to preserve their eligibility for benefits by working part-time for the local union. Although this practice was clearly contrary to the plan's written rules, plan administrators had allowed it in the past. *Id*. at 445-46. The plaintiffs in *Cleary*, however, were denied benefits because the administrators had terminated their practice of granting benefits to part-time workers. The court described the administrators' dilemma as follows:

> The trustees realized late in 1984 that a practice contrary to Fund rules was widely in use. . . . The

10

Board realized its potential liability to Fund participants if they continued disbursing funds to persons who were not entitled to benefits under Fund rules. Furthermore, they weighed the Fund's exposure to successful lawsuits and concluded that beneficiaries who were already receiving benefits would present a greater risk than those who were not yet receiving benefits. In order to limit Fund liability while at the same time lessening the possible harsh effect of enforcing the rule, the trustees made a rational, reasonable decision [to discontinue the practice of awarding benefits contrary to plan rules, while grandfathering in those currently receiving benefits].

*Id*. at 449-50. The court thus deferred to the administrators' decision. It further found that the their choice to stop awarding the erroneous benefits as of an arbitrary fixed date was rational, noting that "[d]rawing a line to define the extent of the remedial action is clearly within the discretion of the trustees." *Id*. at 450.

Finally, in *Oster v. Barco of California Employees' Retirement Plan*, 869 F.2d 1215, 1219 (9th Cir. 1988), the Ninth Circuit affirmed plan administrators' refusal to grant benefits in the form of a lump-sum distribution.[5] The plan documents allowed only an annuity benefit, not a lump sum, but the administrators had in the past followed an informal policy of routinely granting accelerated lump-sum payments. Before Oster requested benefits, however, the administrators had "phased out" that policy based on the advice of an actuary. The Ninth Circuit concluded that "[i]f this decision was a reasonable one, we will not substitute our judgment for that of the Plan's trustees." *Id*. Despite the fact that all prior applicants had been granted a lump-sum distribution, the court refused to find the modification of the policy arbitrary and capricious. The court did not inquire into whether the other employees were similarly situated to Oster; instead, the fact that the

---

[5]*Oster* was superceded in part by a Treasury Regulation, for reasons not relevant to its analysis of similarly situated employees. *See McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1119 (9th Cir. 2000); Treas. Reg. 1.411(d)-4.

change in policy was rational was enough to insulate the administrators from judicial second-guessing.

The cases thus counsel that Vitale's argument from similarly situated employees should be given minimal, if any, weight. Where an ERISA plan mandates a denial of benefits, the mere fact that administrators have in the past granted benefits is no reason to impose a straightjacket requiring them to do so forever. Both the clear requirements of ERISA and obvious reasons of policy suggest that administrators should be allowed to correct their mistakes and deny benefits to those participants who are not eligible for them under the unambiguous terms of their plan.

2. Were McCullough and Sommerville Similarly Situated?

Even if we agreed with Vitale that Latrobe's decision to grant benefits to some employees obligates it to grant benefits to all similarly situated employees, we nonetheless could not find its decision to deny Vitale benefits arbitrary and capricious.

Latrobe argues that it distinguished Vitale from McCullough and Sommerville based on the fact that the latter two employees, unlike Vitale, were protected by the FMLA. Latrobe determined that, under the provisions of the FMLA, it was obligated to treat McCullough and Sommerville as though they were "actively accruing benefits," although in fact they were not. Latrobe cites regulations promulgated under the FMLA that seem to support its position. Vitale disputes Latrobe's interpretation of those regulations, claiming that they did not require Latrobe to treat McCullough and Sommerville as though they were accruing benefits. We describe the disputed regulations in the margin.[6]

---

[6]These regulations require in part that:

With respect to pension and other retirement plans, any period of unpaid FMLA leave shall not be treated as or counted toward a break in service for purposes of vesting or eligibility to participate. Also, if the plan requires an employee to be employed on a specific date in order to be credited with a year of service for vesting, contributions or participation purposes, an employee on unpaid FMLA leave on that date shall be deemed to have been

12

There is no need to resolve this dispute, however, as the correctness of Latrobe's interpretation is not at issue here. We ask only whether it was arbitrary and capricious of Latrobe to draw a distinction, based on its perceived FMLA obligations, between Vitale on the one hand and McCullough and Sommerville on the other. Under this standard of review, a "court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." *Abnathya*, 2 F.3d at 45 (quoting *Lucash v. Strick Corp.*, 602 F. Supp. 430, 434 (E.D. Pa. 1984)).

Latrobe's decision to treat McCullough and Sommerville as "currently accruing a benefit," based on its belief that the FMLA required this treatment, was plainly rational. While Vitale has argued that it was mistaken, she has not given us any reason to believe that it was arbitrary and capricious. Even if Latrobe was overly generous in its interpretation of the FMLA, it has articulated a rational and sensible distinction between Vitale and those who were given benefits.[7] For this Court to second-guess that

---

employed on that date.

29 C.F.R. § 825.215(d)(4). Similarly, "[e]mployees on unpaid FMLA leave are to be treated as if they continued to work for purposes of changes to benefit plans." *Id.* § 825.215(d)(5). Latrobe interprets this language as requiring it to hold open the early retirement benefit to all employees who were on short-term leave covered by FMLA.

Vitale responds that the regulations also provide that "unpaid FMLA leave periods need not be treated as credited service for purposes of benefit accrual, vesting and eligibility to participate." *Id.* § 825.215(d)(4). Vitale believes that this sentence means that employees on FMLA leave need not be treated as though currently employed when a benefits decision is made; Latrobe believes that it means only that the period during which the employee is on leave need not be credited to the employee's total term of service. As explained in the text, however, we need not resolve this dispute here.

[7]At oral argument, Vitale's attorney suggested that this distinction was a *post hoc* rationalization, pointing out that the notice Vitale received denying her benefits did not mention the FMLA. This argument is without merit: the notice did not mention the FMLA because Vitale was not covered by the FMLA. Latrobe's interpretation of the

determination based on a close reading of the FMLA would overstep our "arbitrary and capricious" standard of review.[8]

## V. Conclusion

Because Latrobe's decision to deny benefits to Vitale was compelled by the plain language of the Plan, it was not arbitrary and capricious. Vitale's argument from similarly situated employees is legally insufficient, and Latrobe has articulated a reasonable distinction between Vitale and those employees who were granted benefits. We will therefore reverse the judgment of the District Court and remand with the direction to enter judgment in favor of Latrobe.

---

FMLA was relevant only to its decision to grant McCullough and Sommerville benefits, not to its decision to deny Vitale benefits. An ERISA plan administrator is not obligated, when denying one employee benefits, to explain why every other employee received benefits.

[8]Such second-guessing would also put ERISA fiduciaries between a rock and a hard place: if Latrobe was overly restrictive in its interpretation of the FMLA, McCullough and Sommerville would have a cause of action under the FMLA; if it was overly generous, Vitale could bring an ERISA action like the one at bar. Latrobe's laudable efforts to obey both the letter and the spirit of the FMLA should not be punished by making it liable for additional benefits not required by that statute.