

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2007

# Maciejczak v. Procter & Gamble Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2594

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Maciejczak v. Procter & Gamble Co" (2007). *2007 Decisions.* Paper 946.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/946

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-2594
_____

JOHN W. MACIEJCZAK,

Appellant

v.

PROCTER & GAMBLE CO., PROCTER & GAMBLE DISABILITY
BENEFIT PLAN & BENEFIT PLANS TRUST, PROCTER & GAMBLE
DISABILITY BENEFIT PLAN CORPORATE REVIEWING BOARD,
PROCTER & GAMBLE PAPER PRODUCTS COMPANY

_____

On Appeal From the United States District Court
for the Middle District of Pennsylvania
(No. 02-cv-01041)
District Judge: Honorable Thomas I. Vanaskie

Submitted Under Third Circuit LAR 34.1(a)
May 25, 2007

Before: CHAGARES, HARDIMAN, and TASHIMA,* Circuit Judges.

(Filed June 13, 2007)

_____

*Honorable A. Wallace Tashima, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Appellant John Maciejczak contends that the Procter & Gamble Company

(collectively with the other defendants, "P&G") wrongly terminated long-term disability

benefits due to him under the terms of an employee welfare benefit plan. See Employee

Retirement Income Security Act of 1974 ("ERISA") § 502(a)(1)(B), 29 U.S.C. §

1132(a)(1)(B). The District Court sustained P&G's termination decision, and Maciejczak

appeals. We write only for the parties, and thus do not state the facts separately. Because

P&G's termination of Maciejczak's benefits was not arbitrary and capricious, we will

affirm.

I.

We begin with the standard of review. Where, as here, an ERISA benefit plan

"gives the administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan," we review the denial of benefits under the

arbitrary and capricious standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

101, 115 (1989); Vitale v. Latrobe Area Hosp., 420 F.3d 278, 281-82 (3d Cir. 2005).

Under this standard, the administrator's decision "will be overturned only if it is 'clearly

not supported by the evidence in the record or the administrator has failed to comply with

the procedures required by the plan.'" Orvosh v. Program of Group Ins. for Salaried

2

Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000) (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 41 (3d Cir. 1993)).

Although this standard is deferential, we apply a more robust version of arbitrary and capricious review when the plan administrator is operating under a conflict of interest. See, e.g., Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377 (3d Cir. 2000). In such a case, we employ a sliding-scale approach that "approximately calibrat[es] the intensity of our review to the intensity of the conflict." Id. at 393. Here, the District Court determined that P&G was operating under "a minor conflict of interest." Amended Appendix ("App.") 27. It thus applied a "slightly heightened version of the arbitrary and capricious standard of review." Id. That determination is a mixed question of law and fact. See Kosiba v. Merck & Co., 384 F.3d 58, 64 (3d Cir. 2004). Accordingly, "our review is plenary, though we review [the] district court's underlying factual findings only for clear error." Id.

Both parties disagree with the District Court's "slightly heightened" standard of review. P&G contends that "the standard should not have been heightened at all." P&G Brief 14. Maciejczak argues for "more than a slightly heightened standard." Maciejczak Brief 16. Maciejczak, however, does not articulate precisely how far down the scale our review should slide. Presumably, he would be content with the "somewhat heightened" review we applied in Smathers v. Multi-Tool, Inc., 298 F.3d 191, 199 (3d Cir. 2002), or the "moderately heightened" standard of Kosiba, 384 F.3d at 68. He doubtless would

3

raise no objection if we slid the standard all the way down to the "far end of the arbitrary and capricious 'range.'" See Pinto, 214 F.3d at 394.

In determining where on the arbitrary and capricious scale to situate our review, we must examine the totality of the circumstances. See id. at 392. Among the relevant factors are "the sophistication of the parties, the information accessible to the parties," the financial structure of the plan, and the presence of any procedural anomalies. See id. "Also relevant is the current status of the fiduciary, i.e., whether the decisionmaker is a current employer, former employer, or insurer." Kosiba, 384 F.3d at 64 (internal quotation omitted). In addition, our cases have considered the cost of paying out benefits relative to the total assets of the plan. See Pinto, 214 F.3d at 386.

Conflicts of interest are far more likely to arise when an insurance company, as opposed to the employer, both funds and administers the plan. See Pinto, 214 F.3d at 387-88. Employer-funded plans present a decreased "risk of a conflict of interest . . . because the employer has 'incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits.'" Smathers, 298 F.3d at 197 (quoting Nazay v. Miller, 949 F.2d 1323, 1335 (3d Cir. 1991)). Moreover, "the typical employer-funded . . . plan is set up to be actuarially grounded, with the company making fixed contributions to the . . . fund . . . ." Pinto, 214 F.3d at 388. In such circumstances, the employer "'incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits.'" Id. (quoting Abnathya, 2

4

F.3d at 45 n.5). Conversely, heightened scrutiny may be appropriate when the "plan is 'unfunded,' that is, when it pays benefits out of operating funds rather than from a separate ERISA trust fund." Vitale, 420 F.3d at 282.

Here, P&G pre-funds a Long-Term Disability Trust Fund, and the plan is administered by a Board of Trustees consisting of P&G employees. The Trustees receive no additional compensation for their service on the Board. Moreover, P&G's contributions to the plan are determined based on an estimate of the current year's claim liability and the plan's investment return. Management determines the appropriate annual contribution, if any, according to "anticipated claims and an actuarial determination of unrevealed costs." App. 288.

These features counsel against any heightening of the arbitrary and capricious standard. Our cases "have noted that a situation in which the employer establishes a plan, ensures its liquidity, and creates an internal benefits committee vested with the discretion to interpret the plan's terms and administer benefits does not typically constitute a conflict of interest." Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 254-55 (3d Cir. 2004) (internal quotations and alterations omitted). That is exactly what P&G has done here. Although, as the District Court noted, P&G's contributions are not "fixed," Pinto, 214 F.3d at 388, we are somewhat dubious about the District Court's conclusion that this fact warrants any ratcheting up of the standard of review. The record indicates that P&G made *no* contributions to the fund in both 2001 and 2002. The mere fact that P&G will

5

have to make some contributions in the future, and that those payments are not fixed, is scant evidence of any conflict of interest. The annual payment claimed by Maciejczak was one-tenth of one percent of the amount of payments made by the Trust to participants. That minimal impact on the fund makes it unlikely that the Trustees were conflicted in Maciejczak's case.

Maciejczak also argues that "procedural anomalies" in P&G's claim processing justify increased scrutiny. See Pinto, 214 F.3d at 394. In our view, none of the facts pointed out by Maciejczak constitute "anomalies" that would warrant heightened scrutiny.

About the only factor that does weigh in Maciejczak's favor is his status as a former, as opposed to a current, employee. See Smathers, 298 F.3d at 198 ("Since Smathers was no longer an employee when Multi-Tool made its decision to deny his claims, the counterbalancing of its monetary self-interest by possible concerns about the impact of its decision on morale and wage demands would thereby be lessened."). As P&G points out, though, our cases have never applied heightened scrutiny based on this factor alone. Rather, our cases have applied heightened scrutiny to claims by former employees only where some other structural conflict or procedural anomaly was present. See Kosiba, 384 F.3d at 65; Smathers, 298 F.3d at 198. As a result, we doubt that this factor alone justifies any movement away from traditional arbitrary and capricious review.

But despite our reservations, we need not decide whether the District Court's slight

6

heightening of the arbitrary and capricious standard was error. For our purposes, it is sufficient to hold that *no greater* than a slight heightening was appropriate. We will therefore assume *arguendo* that the District Court's "slightly heightened" form of arbitrary and capricious review applies.

II.

Applying that standard here, we agree with the District Court that the Trustees acted within their discretion in terminating Maciejczak's benefits. The Trustees accepted Dr. Michael Wolk's opinion that Maciejczak was not totally disabled, and rejected the conflicting opinions of Maciejczak's treating physician and chiropractor. Because "[a] professional disagreement does not amount to an arbitrary refusal to credit" the plan participant's doctor, the Trustees' decision was not arbitrary and capricious. See Stratton, 363 F.3d at 258; see also Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003). Furthermore, the fact that P&G granted Maciejczak benefits in 1995 and terminated them in 2001 does not render its decision arbitrary and capricious, even under a slightly heightened version of that standard. The Long-Term Disability Plan specifically states that participants must submit to subsequent examinations to reassess their eligibility. Under the plan, then, the prior determination of eligibility does not foreclose the Trustees from reassessing continued disability. As such, the Trustees' decision to revisit and reverse the earlier disability finding was not arbitrary and capricious. See Ellis v. Liberty Life Assurance Co. of Boston, 394 F.3d 262, 273-74 (5th Cir. 2004) (ERISA plan

7

administrator may reverse initial grant of disability benefits in light of later-discovered evidence that recipient was not disabled at the time of the initial grant of benefits).

## III.

For these reasons, we will affirm the District Court's judgment.