

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-4-2009

# Larry Donachy v. Motion Control Ind

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-3919

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

## Recommended Citation

"Larry Donachy v. Motion Control Ind" (2009). *2009 Decisions*. Paper 1235.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1235

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3919
_____

LARRY DONACHY; BRUCE KINLEY,
Appellants
v.

MOTION CONTROL INDUSTRIES, DIVISION
OF CARLISLE CORPORATION; RETIREMENT PLAN FOR
BARGAINING UNIT EMPLOYEES OF MOTION CONTROL INDUSTRIES,
DIVISION OF CARLISLE CORPORATION

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 07-cv-00068)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit L.A.R. 34.1(a),
May 19, 2009

Before: FUENTES, JORDAN, and NYGAARD, Circuit Judges.

(Filed: June 4, 2009 )

———————————

OPINION OF THE COURT

———————————

FUENTES, Circuit Judge:

   Appellants Larry Donachy and Bruce Kinley appeal the District Court's decision

-1-

that the calculation of their pension benefits by Appellees Motion Control Industries ("Motion Control") and the Retirement Plan for Bargaining Unit Employees of Motion Control Industries ("the Plan") was not arbitrary and capricious in violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. They argue that the District Court erred in refusing to apply a heightened arbitrary and capricious standard of review and in interpreting the terms of the Plan. For the reasons that follow, we will affirm the District Court's grant of summary judgment in favor of Motion Control and the Plan.

## I.

We review a summary judgment ruling de novo. Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). Summary judgment is warranted if "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a suit to recover benefits under 29 U.S.C. § 1132(a)(1)(B), we have previously held that "[w]here, as here, the plan gives the administrator discretionary authority, we review the administrator's exercise of that authority under an 'arbitrary and capricious' standard." Vitale v. Latrobe Area Hosp., 420 F.3d 278, 281-82 (3d Cir. 2005). The Supreme Court has recently referred to the appropriate standard of review as review for abuse of discretion. Metro. Life Ins. Co. v. Glenn, 128 S. Ct. 2343, 2348 (2008). The two standards of review do not differ in any material respect. See Estate of Schwing v. The

<u>Lilly Health Plan</u>, 562 F.3d 522, 526 n.2 (3d Cir. 2009). In conducting our review, if the administrator is operating under a conflict of interest, we must weigh that as a factor in determining whether the administrator has abused its discretion. <u>Glenn</u>, 128 S. Ct. at 2350-51 (citing <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989)).

We have jurisdiction over this appeal under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1291.

## II.

Because we write only for the parties, who are familiar with the facts and prior proceedings, we will set forth only those facts necessary to our analysis. Donachy and Kinley are former employees of Motion Control who worked at a manufacturing facility in western Pennsylvania until it closed in January 2002. Under section 4.4(b) of the Plan, Appellants were entitled to a monthly pension benefit equal to the product of "the pension benefit multiplier and his Credited Service as of the date his Vesting Service terminates." A 2000 supplement to the Plan set out the pension benefit multiplier "depending upon the date of the [employee's] retirement," with the multiplier set at $30 as of the time the plant closed and an increase to $31 scheduled to become effective July 1, 2002.

Appellants' benefits were calculated using the $30 multiplier. They protested this approach to the Carlisle Corporation Incorporated Pension and Benefits Committee ("the Committee"), which administers the Plan, but their request for the application of the $31 multiplier was denied. The Committee based its decision on the statement in the Plan

-3-

documents that Deferred Vested Retirement Benefits, the type of benefits Donachy and Kinley were seeking, are "based on the benefit rate and [the employee's] Credited Service as of the date his Vesting Service terminates." The Plan also provides that "[a]n Employee shall receive credit for Vesting Service for his period of employment by the Employer and Affiliates determined in accordance with uniform and nondiscriminatory standards and policies adopted by the Committee." The Committee interpreted these provisions to mean that Appellants' Vesting Service must have terminated when their employment was terminated, i.e., when the plant closed in January 2002, rejecting Appellants' argument that they could extend the date of their termination of service past July 1 by applying previously accrued service hours and vacation time. The Committee reasoned that their termination was the point at which Donachy's and Kinley's amount of Vesting Service became "fixed and determinable" under the Plan's provisions regarding the calculation of Vesting Service, which require an employee to have 83 1/3 "hours of service" in a calendar year to receive credit for a year of Vesting Service. Additionally, the Committee read the Plan documents to make Vesting Service relevant only to the determination of eligibility for benefits rather than their amount, explaining that otherwise employees terminated on the same date and with the same amount of Credited Service might receive different benefits.

Donachy and Kinley subsequently brought suit in the District Court for the Western District of Pennsylvania under ERISA, 29 U.S.C. § 1132(a)(1)(B), arguing that the

Committee's interpretation of the Plan constituted an abuse of discretion. The District Court reviewed the Committee's decision under the normal arbitrary and capricious standard rather than heightened scrutiny, finding that its adoption of Motion Control's reading of the Plan was insufficient to demonstrate it was biased and thus subject to a conflict of interest. The District Court held that the Committee's interpretation of the Plan documents was reasonable, citing Plan provisions indicating that "Vesting Service" is used to determine "eligibility" for benefits rather than the amount of those benefits.

## III.

On appeal, Donachy and Kinley challenge both the District Court's refusal to apply a heightened standard of review and its endorsement of the Committee's reading of the Plan documents.

## A.

The District Court properly rejected Appellants' argument that the Committee's decision should have received heightened scrutiny because it was biased.[1] Donachy's and

---

[1] In Metropolitan Life Insurance v. Glenn, 128 S. Ct. 2343 (2008), decided since the District Court's opinion was issued, the Supreme Court made clear that an administrator's conflict of interest is simply a "factor" to be considered in reviewing its determinations under a traditional abuse of discretion standard, whereas previous cases had treated a conflict of interest as affecting the standard of review itself on a "sliding scale." See, e.g., Post v. Hartford Ins. Co., 501 F.3d 154, 161 (3d Cir. 2007) ("[I]f the level of conflict is slight, most of the administrator's deference remains intact, and the court applies something similar to traditional arbitrary and capricious review; conversely, if the level of conflict is high, then most of its discretion is stripped away."). Since we agree with the District Court that there is no evidence of partiality here, that distinction is irrelevant to our review of the Committee's decision.

Kinley's allegations that Motion Control was insufficiently responsive to their inquiries about the pension multiplier issue are irrelevant, given that the Committee is an entity independent from Motion Control. Appellants' alternative argument that the Committee demonstrated its bias by uncritically adopting Motion Control's interpretation of the Plan is equally unavailing, as the Committee laid out a five-page, reasoned explanation for its decision. The simple fact that the Committee did not, in Appellants' eyes, spend enough time addressing their arguments does not render its analysis inadequate.

**B.**

Under ERISA, where a plan administrator with discretionary authority is not operating under a conflict of interest, we review its decisions under an abuse of discretion standard. Glenn, 128 S. Ct. at 2348. If the administrator's decision relates to the interpretation of the terms of a plan document, we first consider whether the plan's language is ambiguous. Bill Gray Enterprises, Inc. Employee Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001). If the terms of the plan document are ambiguous, we "must take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable." Id.

In this case, although the Plan terms contain some ambiguity, the Committee's interpretation of the provisions relating to the calculation of the pension benefit multiplier was reasonable. The Committee accepted that the appropriate multiplier for a member's benefit calculation depends on the date the member's Vesting Service terminates, and

concluded that the Vesting Service must terminate when the member's employment is terminated because that is the date when the member's "amount of Vesting Service [becomes] fixed and determinable." (App. 104.) This differentiation between the date on which Vesting Service terminates and how much Vesting Service a member has amassed makes obvious sense, given that the Plan supplement sets the cutoffs for the multiplier applicable to a member at particular dates, such as July 20, 2000 and July 1, 2001. Under section 3.5 of the Plan, the amount of a member's Vesting Service is measured in units of whole calendar years, depending on whether the member has accrued sufficient hours of service within that calendar year. Therefore the amount of a member's Vesting Service could never end in the middle of a year, and the date of <u>termination</u> of Vesting Service must be different from the <u>amount</u> of Vesting Service.

Once that distinction was made, it was also reasonable for the Committee to rely on section 3.5's statement that "an Employee shall receive credit for Vesting Service for his period of employment" in deciding that Vesting Service must terminate when that "period of employment" is over, namely when the employee retires or his or her employment is terminated. Reinforcing that approach is the fact that the Plan supplement's chart of pension benefit multipliers sets each multiplier according to the member's "date of retirement." Moreover, as the Committee noted, choosing the date of employment termination as the relevant date provides a fixed point at which the employee's pension benefits can be calculated, whereas Appellants' approach, to look to any hours that can be

credited within the calendar year when the employee stops working to determine accrued hours of service, would leave some employees in limbo as to their pension status for the months between the end of their employment and the end of the calendar year. Overall, the Committee's reading of the relevant retirement benefit provision is both consonant with the plain language of the Plan as a whole and reasonable in terms of the Plan's real-world implementation.

## IV.

For the foregoing reasons, we affirm the judgment of the District Court.