**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3282
_____

JOHN GUTHRIE, as Beneficiary of an Accidental Death Insurance Policy
Issued in the Name of Corey Guthrie, deceased,
Appellant

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:12-cv-07358)

District Judge: Honorable Jose L. Linares

Submitted Under Third Circuit LAR 34.1(a)
March 17, 2015

BEFORE: FUENTES, RENDELL[**], and BARRY, *Circuit Judges*

(Filed: September 2, 2015)

_____

OPINION[*]
_____

---

[**] The Honorable Marjorie O. Rendell assumed senior status on July 1, 2015.
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge.*

John Guthrie challenges the District Court's decision granting summary judgment on his denial of benefits claim brought under ERISA.[1] For the reasons set forth below, we affirm.[2]

## I.

In the early morning hours of August 6, 2010, Corey Guthrie died following a single-vehicle accident in the state of Virginia. He was last seen alive leaving a restaurant and bar about a mile from the crash. Police were dispatched to the scene at approximately 12:59 a.m. and reported that Corey Guthrie ran his motorcycle off the road toward an embankment. The road was dry, had no defects, and there was no adverse weather that night. Corey Guthrie was taken to the hospital and pronounced dead at 1:37 a.m. A toxicology report completed after the accident stated that his blood alcohol concentration ("BAC") was 0.14% and his vitreous humour alcohol level was 0.13%.[3] The legal blood alcohol limit in Virginia is 0.08%.[4]

At the time of the accident, Corey Guthrie was employed by CACI International, Inc. and received insurance coverage for "Accidental Death and Dismemberment," an insurance policy issued by Prudential. The plan provided for coverage in the event of

[1] 29 U.S.C. § 1001 *et seq.*
[2] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. Because we write for the parties and the District Court, we recite only those facts necessary to our conclusion.
[3] The vitreous humour is the clear gel that fills the space between the lens and the retina of the eyeball. The vitreous humour is of forensic interest because the in vivo serum levels of alcohol, drugs, and other substances can be estimated from the vitreous humour.
[4] Va. Code Ann. § 18.2-266.

accidental death, with a benefit amount of $270,000. As the sole beneficiary, John Guthrie (Corey Guthrie's father) filed a claim under the policy after his son's death. Prudential denied the claim due to an exclusion in the policy that was triggered if, at the time of the accident, the operator of the vehicle was legally intoxicated. Based on reports from the accident, Prudential concluded that Corey Guthrie was above the legal blood alcohol limit when he crashed.

John Guthrie ("Guthrie") appealed the decision, asserting that Prudential could not determine his son's blood alcohol level at the time of the accident. Because of this, Guthrie argued, Prudential could not meet its burden of proving that the policy exclusion applied. In response, Prudential contacted the Commonwealth of Virginia Department of Forensic Science that had collected Corey Guthrie's blood and vitreous humour samples.[5] Prudential was informed that in order to receive the requested information, it would need to subpoena the Commonwealth and pay a service fee to speak with any of the department's employees. Additionally, Prudential contacted the Medical Examiner's Office to request the same information but received no response.

As a result, Prudential referred the matter internally and requested that Albert A. Kowalski, M.D., review the case to determine whether he could discern Corey Guthrie's blood alcohol content at the time of the accident. Dr. Kowalski's analysis consisted of a "retrograde extrapolation" in which he declared the rate of elimination could be

---

[5] Prudential requested the date and time the samples were drawn, the date and time tests were performed, whether the chain of custody was established and maintained, the department's opinion as to whether the BAC of 0.14% reflected Corey Guthrie's BAC between midnight and 1:00 a.m., and the department's opinion as to what Corey Guthrie's BAC would have been during that time period.

determined within a reasonable degree of medical certainty. He noted that the rate of absorption could not be determined because there were several unknown variables, which included the type of beverage Corey Guthrie had been consuming prior to the accident, quantity of beverage, time of last drink, and quantity of food ingested. Dr. Kowalski estimated the blood alcohol level using the vitreous humour alcohol level of .13% from the toxicology report and determined the range to be .10% - .12%. He added that at this level, Corey Guthrie would have experienced significant impairment of motor skills, judgment, speech, balance, vision, reaction time and hearing, and that, at this level, the risk of a single-vehicle fatal car crash increases to 48 times that of a driver who had not consumed alcohol. Dr. Kowalski concluded that Corey Guthrie's physical impairments led to "a direct causal connection between the insured's level of intoxication and the motorcycle accident of 08/06/10 and his death."[6] After reviewing the information, Prudential denied Guthrie's appeal.

The District Court determined that Prudential's denial of the claim due to Corey Guthrie's intoxication at the time of his death was supported by substantial evidence in the record. The District Court explained that Guthrie did not present any evidence suggesting that his son was not legally intoxicated at the time of the accident. In the absence of such evidence, the District Court held Prudential reasonably relied on Dr. Kowalski's analysis in assessing the claim for accidental death benefits and that the decision was neither arbitrary nor capricious. The District Court granted Prudential's motion for summary judgment and denied Guthrie's motion. This appeal followed.

---

[6] App. A167; A237.

4

## II.

When reviewing a grant of summary judgment, we apply the same standard as the District Court. Moreover, our review of an appeal from entry of summary judgment is plenary.[7] We may affirm the District Court's decision if "the moving party is entitled to judgment as a matter of law, with the facts reviewed in the light most favorable to the non-moving party."[8] "We review a decision denying benefits under an arbitrary and capricious standard of review where, as here, the administrator has discretionary authority to determine eligibility for benefits, and, we will affirm an administrator's decision unless "it is without reason, unsupported by substantial evidence or erroneous as a matter of law."[9] The scope of this review is deferential to the benefits provider, and "the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits."[10]

On appeal, Guthrie asserts two arguments: (1) that the District Court erred by failing to give weight to his structural conflict-of-interest argument due to Prudential's role as both claim payer and claim evaluator; and (2) that the District Court erred by failing to assess Prudential's burden of proof in light of flawed science and questionable evidence. We address each claim in turn.

## A.

---

[7] *See Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 281 (3d Cir. 2005).

[8] *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 844 (3d Cir. 2011) (citation and internal quotations omitted).

[9] *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233-34 (3d Cir. 2009).

[10] *Id.* (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)).

Guthrie argues that the District Court failed to adequately consider Prudential's role as both claim payer and claim evaluator. We disagree. In *Metropolitan Life Insurance Co. v. Glenn*, the Supreme Court acknowledged that this type of dual role "creates a conflict of interest" and that conflict should be considered "as a factor in determining whether the plan administrator has abused its discretion in denying benefits."[11] Here, the District Court examined the inherent conflict of interest as a factor. In doing so, it, however, recognized that "not every conflict of this sort will be significant" and found "no evidence in the record to accord this factor special emphasis."[12] It then examined each of Guthrie's over-arching theories, namely that: (1) Prudential did not establish a chain of custody from the toxicologist who interpreted the results of the test; (2) Prudential could have, but did not obtain an independent opinion; and (3) Dr. Kowalski's retrograde extrapolation analysis was unreliable. The District Court concluded that Guthrie did not submit any evidence regarding the structure of Prudential's operations and there was no sign of a pattern of bias in the investigation. We agree with the District Court's conclusion.

The District Court found no reason that Prudential should not have relied on the toxicology report and no legal authority to support Guthrie's position that proof of chain of custody was necessary. Prudential played no role in the administration of the test. Guthrie fails to demonstrate that the test was inaccurate or compromised, and he fails to

---

[11] *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008).
[12] App. A19-20.

cite any legal authority indicating the contrary. Guthrie also neglects to illustrate how the data points stemming from the chain of custody are pivotal to his argument.

Furthermore, Guthrie argues Prudential's failure to obtain an independent, outside opinion merits great scrutiny. The record shows, and the District Court recognized as sufficient, that Prudential attempted to obtain other opinions before issuing its decision. Indeed, Guthrie did not argue Prudential defied its obligations as Plan administrator in declining to subpoena the information and pay a fee for a third party's opinion. Prudential's lack of corroboration did not increase its level of bias, as it attempted to mitigate the circumstances by contacting outside departments.

Finally, Guthrie challenges the reliability of the retrograde analysis performed by Dr. Kowalski. The District Court noted that Guthrie relied on several cases arising in the criminal context, and that Prudential was not bound by the standard of proof in a criminal context. Guthrie, however, supplied no evidence to suggest that the analysis was unreliable or inadequate, nor did he offer a plausible alternative to retrograde extrapolation. Without convincing evidence otherwise, the District Court correctly concluded that Dr. Kowalski's retrograde analysis was based on substantial evidence and Prudential was reasonable to rely on it.

Thus, we hold that the District Court gave sufficient consideration to Prudential's conflict-of-interest. Because Guthrie failed to present evidence that Prudential's investigation was tainted or that an analysis to determine Corey Guthrie's BAC at the time of the crash could have been done another way, Prudential properly relied Dr.

7

Kowalski's analysis. There is no evidence that Prudential was motivated by self-interest in its benefits denial decision.

**B.**

Guthrie also asserts that the District Court's review was overly deferential to the Plan administrator. We must determine if the decision was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] The District Court held that the evidence in the record substantially supported Prudential's finding that Corey Guthrie was legally intoxicated at the time of the accident and that the intoxication caused or contributed to the accident and resulting death. We agree with this conclusion.

The police report stated that Corey Guthrie ran off the road towards an embankment on a dry road with no adverse weather conditions. Corey Guthrie was last seen alive drinking alcohol at a local bar. According to the toxicology report, Corey Guthrie's blood alcohol level was 0.14% and his vitreous humour alcohol level was 0.13%. Furthermore, Dr. Kowalski opined that Corey Guthrie's blood alcohol level at the time of the accident could be determined within a reasonable degree of medical certainty through retrograde extrapolation. He concluded that Corey Guthrie's blood alcohol level was between 0.10 and 0.12% at the time of the accident.

Based on this evidence, we hold that the District Court did not err in affirming Prudential's denial of coverage.

**III.**

---

[13] *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012)

For all the reasons stated above, we affirm the District Court's order granting summary judgment.