Stuart B. WEISS, Plaintiff,

v.

The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Defendant.

Civil Action No. 05–5121 (HAA).

United States District Court, D. New Jersey.

Aug. 2, 2007.

Stephen R. Bosin, River Edge, NJ, Plaintiff.

Seth Ptasiewicz, Wilson, Elser, Moskowitz, Edleman & Dicker, LLP, Newark, NJ, Defendant.

### SECOND AMENDED OPINION AND ORDER*

ACKERMAN, District Judge.

This matter comes before the Court on cross motions for summary judgment regarding Plaintiff Stuart B. Weiss's Complaint alleging that Defendant Prudential Insurance Company improperly denied Weiss long-term disability ("LTD") benefits. For the following reasons, Plaintiff's motion (Docket No. 10) will be GRANTED and Defendant's motion (Docket No. 9) will be DENIED.

### Background

It is undisputed that Weiss was employed by the Essex County Vocational Board of Education as a teacher of food services in Newark, New Jersey. Weiss asserts, but Prudential does not acknowledge nor rebut, that he was a food services instructor to special education students. For reasons discussed below, this distinction between being categorized as a "teacher" versus a "special education food services teacher" is important. While working at one of the schools, on December 5, 2002, Weiss slipped and fell while entering a freezer. He was subsequently diagnosed with "left paracentral disc herniation at T11–12 with left foraminal narrowing," "a disc bulge at L5–S1," and "lumbar radiculopathy." (*See* Weiss 56.1 Statement at ¶ 8; Prudential 56.1 Statement at ¶ 8.)

As an employee of the Essex County Vocational Board of Education, Weiss was covered by the group long-term disability insurance (the "Policy") of the New Jersey Education Association. Under the Policy,

an individual is deemed disabled "when Prudential determines that: you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury." (Hannan Certif. Ex. C.) "Material and substantial duties" are then defined as duties that "are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." (*Id.*) "Regular occupation means the occupation you are routinely performing when your disability occurs. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." (*Id.*)

Prudential's denial of Weiss's LTD benefits was based on its conclusion that "[t]here is no evidence in the medical records to support that you have a medical condition of a degree or severity which would prohibit you from physically performing the essential job functions of light duty job as a Teacher." (Bosin Certif. Ex. C "Denial Letter".) Apparently, Prudential interpreted the Policy's definition of "regular occupation" to mean that Weiss was a "teacher." There is no question that Weiss was indeed a teacher, but it is unclear why Prudential used the broadest characterization of his occupation.

Weiss and Prudential have cross-moved for summary judgment. The central focus in determining whether summary judgment should be granted for either party is on the proper interpretation of the term "regular occupation."

### Analysis

#### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted

---

* This Second Amended Opinion and Order simply incorporates the first amended Order of May 23, 2007 into this Court's original Opinion and Order of May 15, 2007 and now designates this Opinion for publication.

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Todaro v. Bowman,* 872 F.2d 43, 46 (3d Cir.1989); *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987). Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.,* 843 F.2d 139, 143 (3d Cir.1988). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248, 106 S.Ct. 2505; *see also Jersey Cent. Power & Light Co. v. Lacey Twp.,* 772 F.2d 1103, 1109 (3d Cir.1985).

The substantive law will identify which facts are "material." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. Therefore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505. An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Id.* A district court faced with a summary judgment motion must view all evidence and the inferences to be drawn therefrom in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Peters v. Del. River Port Auth. of Pa. & N.J.,* 16 F.3d 1346, 1349 (3d Cir. 1994). It is inappropriate for a district court to resolve factual disputes or make credibility determinations at the summary judgment stage. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992). Indeed, "where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.*

■ This does not mean, however, that a district court may ignore the weight of the evidence. *Id.* "[I]f the non-movant's evidence on any essential element of the claims asserted is merely 'colorable' or is 'not significantly probative,' the court should enter summary judgment in favor of the moving party." *Peterson v. Am. Tel. & Tel. Co.,* Civ. A. No. 99–4982, 2004 WL 190295, at *3 (D.N.J. Jan. 9, 2004) (quoting *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Therefore, to raise a genuine issue of material fact, the summary judgment opponent " 'need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224, 1230 (3d Cir.1993); *see also Anderson,* 477 U.S. at 252, 106 S.Ct. 2505 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

**B. Heightened Arbitrary and Capricious Standard**

■ The Supreme Court has held that where an ERISA employee benefit plan grants the plan administrator discretion in interpreting the plan documents and determining eligibility, a reviewing court must give deference to the administrator's decisions. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Court may only determine whether the administrator's decision was arbitrary and capricious,

and must uphold the determination as long as it is reasonable. *Dewitt v. Penn–Del Directory Corp.,* 106 F.3d 514, 520 (3d Cir.1997).

■ However, the Court must also consider whether some structural conflict of interest on the part of the Plan warrants "heightened" arbitrary and capricious review under the sliding-scale approach adopted by the Third Circuit in *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 392–93 (3d Cir.2000). *Pinto* provided several nonexclusive factors for courts to consider in making this determination. *Kosiba v. Merck & Co.,* 384 F.3d 58, 64 (3d Cir.2004) (citing *Pinto,* 214 F.3d at 392). In *Pinto,* the Court of Appeals found a conflict of interest and applied heightened arbitrary and capricious review because the insurer both made benefit determinations and funded claims. *Pinto,* 214 F.3d at 393.

■ Here, Prudential admits that it is both the claims administrator and pays the LTD benefits from general revenue, thereby warranting the heightened standard of arbitrary and capricious review. This "somewhat heightened" arbitrary and capricious review standard remains deferential to the Plan Administrator's determination. Indeed, as our Circuit has commented, "it is not clear how to employ a slightly heightened form of arbitrary and capricious review." *Stratton v. E.I. Du-Pont De Nemours & Co.,* 363 F.3d 250, 255 (3d Cir.2004). In the face of this confusion, the Third Circuit has advised district courts to "apply the arbitrary and capricious standard, and integrate conflicts as factors in applying that standard, approximately calibrating the intensity of [the] review to the intensity of the conflict." *Id.* (quoting *Pinto,* 214 F.3d at 393). This Court "may not substitute its own judgment for that of plan administrators under either the deferential or heightened arbitrary and capricious stan-

dard." *Stratton,* 363 F.3d at 256 (citing *Smathers,* 298 F.3d at 199). "Even under the heightened standard, 'a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" *Id.* (quoting *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.,* 222 F.3d 123, 129 (3d Cir.2000)). However, the deference demonstrated by these standards must be "tempered" somewhat due to the identified conflict of interest. *Smathers,* 298 F.3d at 200.

■ The Third Circuit, following the guidance of the Eighth Circuit, has outlined several factors for courts to consider in determining whether an interpretation of a plan is reasonable:

(1) whether the interpretation is consistent with the goals of the Plan; (2) whether it renders any language in the Plan meaningless or internally inconsistent; (3) whether it conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the [relevant entities have] interpreted the provision at issue consistently; and (5) whether the interpretation is contrary to the clear language of the Plan.

*Moench v. Robertson,* 62 F.3d 553, 566 (3d Cir.1995) (quoting *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.,* 48 F.3d 365, 371 (8th Cir.1995)); see also *Nevins v. Prudential Ins. Co. of Am.,* 974 F.Supp. 400, 404 & n. 3 (D.N.J.1997) (applying Moench factors to review of benefit denial under § 1132(a)(1)(B)). The most important *Moench* factor is the fifth factor: the clear, plain language of the Plan. *McCall v. Metropolitan Life Ins. Co.,* 956 F.Supp. 1172, 1183 (D.N.J.1996). A Plan Administrator has a statutory and fiduciary duty to strictly interpret the terms of the Plan. *See* 29 U.S.C. § 1104(a)(1)(D).

" 'An administrator who strictly adheres to the lawful terms of an employee benefit plan may not be found to have acted arbitrarily and capriciously.' " *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 285 (3d Cir.2005) (quoting *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 286 (3d Cir. 1988)).

## C. Regular Occupation

■ As noted previously, the central question is whether Prudential interpreted the term "regular occupation" in the policy in an unreasonable manner, as analyzed under the heightened arbitrary and capricious standard of review. The Third Circuit addressed this very term in *Lasser v. Reliance Standard Life Insurance Company*, 344 F.3d 381, 385–87 (3d Cir.2003). *Lasser* involved policy language similar to the instant matter, but in that case "regular occupation" was left undefined in the policy. *Id.* at 385. The Court of Appeals

declared that if the term was ambiguous, the insurance company's definition was entitled to deference under the arbitrary and capricious standard.** *Id.* However, the *Lasser* court found no ambiguity in the phrase "regular occupation." Focusing on the modifier before "regular occupation," which in that case was "his/her," and the purpose of disability insurance, the court concluded that "regular occupation" is the "usual work that the insured is actually performing immediately before the onset of disability." *Id.* at 386. Applying that standard to the facts, the *Lasser* court determined that "Dr. Lasser's regular occupation was as an orthopedic surgeon responsible for emergency surgery and on-call duties in a relatively small practice group and within a reasonable travel distance from his home in New Jersey." *Id.*

Notably, the *Lasser* court posited that the insurance company's broader interpre-

---

** This Court recognizes that *Lasser* is the law of this Circuit and therefore binding on this Court. Indeed, it provides useful guidance in interpreting "regular occupation." While *Lasser* is the most applicable case for the issue of what constitutes a "regular occupation," it would appear that the *Lasser* court placed a bit of a gloss on the arbitrary and capricious standard by implying that the plan administrator's denial of benefits is given deference *only* if the disputed term is ambiguous. *See Lasser*, 344 F.3d at 386. ("We recognize that, if the meaning of 'regular occupation' is ambiguous, Reliance's definition is entitled to deference under the applicable arbitrary and capricious standard of review.") For this proposition, the *Lasser* court cited a previous Third Circuit case, *Skretvedt v. E.I. DuPont de Nemours & Co.*, which declared that "[t]he Board's interpretation of DuPont's pension and benefits plan is entitled to deference under the arbitrary and capricious standard, unless it is contrary to the plain language of the plan." 268 F.3d 167, 177 (3d Cir.2001). Thus, it would appear that the *Lasser* court interpreted *Skretvedt* to mean that an interpretation of an *unambiguous* term is entitled to the same *de novo* review as an interpretation that is contrary to a plan's plain meaning.

This Court's reading of *Skretvedt* is somewhat different, particularly in light of the Supreme Court's decision in *Firestone Tire & Rubber Co. v. Bruch*, which rejected the *de novo* standard of review for benefit plans that give the administrator or fiduciary discretionary authority. 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

In rejecting the *de novo* standard for cases like *Lasser*, *Skretvedt*, and the instant matter, the Supreme Court in *Firestone* mandated the "arbitrary and capricious" standard of review, without reference to whether a policy term was ambiguous. *See id.; see also Lasser*, 344 F.3d at 384 ("The Supreme Court has mandated that courts review[,] under the arbitrary and capricious standard[,] claim denials in ERISA cases.") (citing *Firestone*, 489 U.S. at 115, 109 S.Ct. 948). Following Supreme Court precedent in the face of a possible inconsistency with subsequent Third Circuit jurisprudence, this Court will apply the somewhat heightened arbitrary and capricious standard to the instant Policy, without regard to whether the term "regular occupation" or its definition is ambiguous. Nevertheless, as stated previously, *Lasser* still provides useful guidance in interpreting the term "regular occupation."

tation of the term would not even survive reasonableness review under the more deferential arbitrary and capricious standard. The insurance company had argued that "regular occupation is not your job with a specific employer, it is not your job in a particular work environment, nor is it your specialty in a particular occupational field." *Id.* at 385. Instead, the insurance company argued that it viewed the doctor's "regular occupation as it is performed in a typical work setting for any employer in the general economy." *Id.*

In rejecting the insurance company's interpretation, the Court of Appeals noted that "[e]ven were a court not to limit itself exclusively to the claimant's extant duties, that person's 'regular occupation' nonetheless requires 'some consideration of the nature of the institution [at which the claimant] was employed.'" *Id.* at 386 (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 253 (2d Cir.1999).) Ultimately, the *Lasser* court concluded that "it is unreasonable for [the insurance company] to define 'regular occupation' differently from its plain meaning or even the somewhat more relaxed understanding of . . . *Kinstler* without explicitly including that different definition in the Policy." *Id.* at 386–87.

This holding implies that the Third Circuit would have found reasonable the interpretation "regular occupation as it is performed in a typical work setting for any employer in the general economy" if it were explicitly included in the policy. In that regard, it would appear that Prudential's interpretation that Weiss was simply a "teacher" would be reasonable because the Policy stated that "Prudential will look at your occupation as it is normally per-

formed instead of how the work tasks are performed for a specific employer or at a specific location." (Hannan Certif. Ex. C.) That might be the end of the matter, except that the *Lasser* court also declared that determining the claimant's "regular occupation" requires "some consideration of the nature of the institution [at which the claimant] was employed." *Lasser,* 344 F.3d at 386. It is difficult to square this guidance from the Court of Appeals with the court's implication that a policy including a more explicit definition of the term would be reasonable.

While *Lasser* provides some guidance for the instant matter, this Court recognizes that Prudential did include a definition, albeit a somewhat opaque one, of the term "regular occupation," whereas the *Lasser* court interpreted a term completely undefined by the plan at issue. Again, Prudential never explained why it classified Weiss simply as a "teacher," rather than the somewhat more specific title of "special education teacher," or the even very specific "special education food services teacher." *** As noted above, "regular occupation" is defined in the Policy as "the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." (Hannan Certif. Ex. C.) Such a definition clearly allows Prudential to look outside the Essex County Vocational School in Newark, New Jersey to determine whether Weiss could perform his regular occupation. But that does not help answer the question of whether Prudential acted arbitrarily and capriciously in looking at the

---

*** Notably, Prudential states in its brief that "[u]pon information and belief, plaintiff worked in his *usual occupation* as a Teacher of *Food Services*." (Prudential Br. in Support of Mot. for Summ. J. at 9 (emphases added).)

Why Prudential characterized his "usual occupation" as a teacher of food services in its brief, but not in its analysis of whether he was entitled to LTD benefits is unclear to the Court.

broad category of "teacher" rather than a more specific descriptive category of teachers.

Arguably, if Prudential wanted to define all persons covered by the Policy as simply "teachers," it could have done so by incorporating appropriate terminology in the definition of "regular occupation." For example, the insurance company in *Lasser* did not define the term in the policy, but argued to the Third Circuit that "regular occupation is not your specialty in a particular occupational field." *Lasser*, 344 F.3d at 385. The Third Circuit rejected this post-hoc definition, but suggested it might be reasonable if included in the policy language. *Id.* at 386–87. As such, if Prudential wanted the broadest definition of "regular occupation," it could easily have defined the term by declaring that "your specialty in a particular occupational field" will not be considered in determining your "regular occupation." Such an explicit exclusionary definition would appear to more clearly justify Prudential's decision in the instant matter that Weiss was able to perform the "light duty job as a Teacher." (*See* Bosin Certif. Ex. C "Denial Letter".)

As it stands, however, there is nothing in the Policy's definition of regular occupation that would suggest to a potential claimant in Weiss's position that he would be compared to a chemistry, physics or English teacher, even though he had been working as a food services instructor to special education students. On the contrary, the definition suggests quite the opposite insofar as it refers to what occupation Weiss was "routinely performing when your disability occurs." (Hannan Certif. Ex. C.) Admittedly, the clarifying

sentence in the definition suggests that Prudential could look to other schools around the country to determine whether food service instructors to special education students normally are required to lift heavy foods and food service items. If it concluded that most such instructors do not have to do such heavy lifting, then Prudential could reasonably have concluded that food service instructor to special education students is a "light duty job as a Teacher." Nothing in the record, however, suggests that Prudential actually looked at anything more than the broad category of "teacher" in assessing Weiss's regular occupation.

■ In its response to Weiss's motion for summary judgment, Prudential asserts that it was Weiss's "obligation to provide competent proofs as to his purported job duties that were allegedly at variance with the normal job duties of a teacher." (Prudential Resp. Br. at 3.) Weiss did provide a very detailed two-page synopsis of his job duties as food service instructor to special education students.**** (Bosin Certif. Ex. A.) Prudential does not deny receiving Weiss's synopsis, but instead asserts that "[r]ather than provide to Prudential in support of his application for continued LTD Benefits such information, plaintiff submitted what at best could be described as a self-serving document listing what he claims are his job duties." (Prudential Resp. at 3.) Remarkably, Prudential baldly declares that "[i]t was incumbent upon plaintiff, not Prudential, to produce from his employer a document prepared by his employer confirming his job duties. His failure to do so warranted Prudential's decision to deny his claim for LTD Benefits."

---

**** Weiss's letter included more than thirty bullet points describing his daily activities, most of which involved lifting bulky or heavy items, e.g., "Beside regular physical movement of supervising and instructing students, responsibilities include: Lift 50 pound sacks of produce (carrots, onions) and place on bottom shelf of reach-in refrigerator; Lift 50 pound boxes of baking potatoes and put them on shelf in walk-in refrigerator." (Bosin Certif. Ex. A.)

(*Id.*) The Court is unclear whence such an argument comes. Prudential does not identify anything in the Policy that requires a claimant to have his *employer* produce certain documents. Quite the contrary, the Policy explicitly directs the claimant with respect to what documentation is needed.

**What Information Is Needed as Proof of Your Claim?**

Your proof of claim, provided at your expense, must show:

1. That you are under the regular care of a doctor.
2. The appropriate documentation of your monthly earnings (such as a pay stub).
3. The date your disability began.
4. Appropriate documentation of the disabling disorder.
5. The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.
6. The name and address of any hospital or institution where you received treatment, including all attending doctors.
7. The name and address of any doctor you have seen.

(Hannan Certif. Ex. C.) None of the above seven requirements even remotely suggest that Weiss's letter regarding his job duties would be facially insufficient. Moreover, there is nothing in the record to indicate that Prudential requested anything more authentic or less "self-serving." As such, Prudential's assertion now that the letter was incompetent evidence is unreasonable.

As Weiss notes, there is nothing in the record to indicate that Prudential ever analyzed the significance of the physical demands and requirements for Weiss to perform his duties as a food service instructor to special education students. As the Third Circuit noted in *Lasser*, "[e]ven were a court not to limit itself exclusively to the claimant's extant duties, that person's 'regular occupation' nonetheless requires 'some consideration of the nature of the institution [at which the claimant] was employed.'" *Lasser*, 344 F.3d at 386 (citation omitted). As such, while Prudential was not required to limit itself *exclusively* to Weiss's duties at the Essex County Vocational School, it nonetheless was required to give some consideration to the school at which Weiss was employed. There is nothing to indicate that Prudential gave any such consideration.

Furthermore, Prudential's interpretation of the Policy was unreasonable based upon a consideration of the *Moench* factors. The first factor asks whether the administrator's interpretation was consistent with the goals of the plan and the fifth factor asks whether the interpretation was contrary to the plain language of the plan. *See Moench*, 62 F.3d at 566. Here, the Policy clearly states at the outset that it is intended to provide "financial protection for you by paying a portion of your income while you have a long period of disability." (Hannan Certif. Ex. C.) Obviously, just because Prudential interpreted the Policy such that Prudential did not pay Weiss a portion of his income does not necessarily mean that Prudential's interpretation was inconsistent with the goals of the plan. Nevertheless, defining "regular occupation" in the Policy to mean "the occupation you are routinely performing when your disability occurs" necessarily implies that Prudential would at least look at Weiss's job as a food services instructor to special education students. Prudential's interpretation that Weiss was a "teacher," and nothing more specific, is inconsistent with the goals of the Policy and contrary to the plain language of the Policy. *See Moench*, 62 F.3d at 566.

In sum, Prudential's decision to deny Weiss LTD benefits was arbitrary and capricious because that decision was based upon an unreasonable interpretation of the term "regular occupation." In other words, had the Policy more clearly stated that those covered under the Policy were simply "teachers" rather than some more specifically defined teacher, then Prudential's decision that Weiss's injuries did not prevent him from performing the job of a light duty teacher would have been a reasonable decision. But given the more generalized definition in the Policy of the term "regular occupation," Prudential's interpretation of that term cannot be characterized as reasonable under the heightened arbitrary and capricious review standard. Moreover, an analysis of the *Moench* factors further demonstrate the unreasonableness of Prudential's decision because its interpretation was inconsistent with the goals of the long-term disability benefits Policy and contrary to the clear language of the Policy. *See Moench,* 62 F.3d at 566.

### Conclusion and Order

Plaintiff Weiss's motion for summary judgment (Docket No. 10) is hereby GRANTED and Defendant Prudential's motion for summary judgment (Docket No. 9) is hereby DENIED. Judgment shall be entered in Plaintiff's favor in the amount of $46,424. It is further ordered that the matter is hereby REMANDED to Defendant Prudential for further administrative proceedings. The Clerk shall mark this case CLOSED.