J-A01044-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PATRICIA SKONIECZNY, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL W. COOPER, COOPER AND | : | |
| LEPORE, | : | |
| | : | |
| Appellees | : | No. 1166 WDA 2016 |

Appeal from the Judgment Entered July 22, 2016,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s): GD 01-018372

BEFORE:   BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED APRIL 28, 2017**

Patricia Skonieczny appeals *pro se* from the judgment entered on July 22, 2016, after the trial court directed a verdict in favor of Daniel W. Cooper, Esquire, and his law firm, Cooper and Lepore, LLC (collectively, Appellees), in this legal malpractice action.  Upon review, we affirm.

We summarize the relevant factual and procedural history of this case as follows.  In 1969, Skonieczny was hired by USAir[1] as a flight attendant. Skonieczny's "active service career was studded with several intervals due to her having a large family and being pregnant a number of times because of her religious belief." Amended Complaint, 5/25/2012, at ¶ 5.  During this

_____

[1] At the time she was hired, the airline was called Allegheny Airlines.  That airline eventually became USAir, and then USAirways.  Because the airline was called USAir for the time period relevant to the issues in this case, we will refer to it as USAir.

_____

*Retired Senior Judge assigned to the Superior Court.

time period, USAir had a policy governing the weight of flight attendants when returning from maternity leave. Under the policy, flight attendants were weighed upon returning to work. "If the flight attendant exceeded the required weight pursuant to USAir's weight chart, the flight attendant remained on active status … but was required to lose a certain amount of weight every three months until the flight attendant met the required goal." *Id*. at ¶ 8. "If the flight attendant was unable to lose the required weight within the time frame allotted, USAir's policy was to place the flight attendant on weight suspension." *Id*. at ¶ 9.

In October 1990, after Skonieczny gave birth to her eighth child, she was placed on weight suspension status upon returning to work. Unable to reach the weight goal, Skonieczny remained on weight suspension status in December 1990. While on this weight suspension, Skonieczny became pregnant with her ninth child. On May 21, 1992, Skonieczny was removed from weight suspension status and placed on maternity leave status.[2] Skonieczny's ninth child was born on November 3, 1992, and she was scheduled to return to work on April 28, 1993. She was immediately placed on weight suspension status. She remained on weight suspension status until March 3, 1994, when she notified USAir she was pregnant with her tenth child. From March 3, 1994 until her expected due date, October 10,

_____

[2] "Due to complications during [that] pregnancy, [Skonieczny] applied for and received a disability benefit from USAir as permitted in USAir's Flight Attendant Maternity Policy [(Maternity Policy)] and pursuant to the Collective Bargaining Agreement [(CBA)]." Amended Complaint, 5/25/2012, at ¶ 19.

1994, Skonieczny's status was changed to maternity leave. Sadly, Skonieczny miscarried on April 3, 1994. Pursuant to the CBA, Skonieczny was still entitled to six months of maternity leave.

Meanwhile, the Equal Opportunity Employment Commission (EEOC) had filed a class-action lawsuit against USAir in the U.S. District Court for the Middle District of North Carolina (**EEOC v. USAir, Inc.**, C.A. No. 6:92CV00272 (M.D.N.C.)) alleging USAir was discriminating against flight attendants "on the basis of sex and age in the application of its weight policy." Amended Complaint, 5/25/2012, at ¶ 30. The lawsuit settled on March 23, 1994, and Skonieczny learned about this lawsuit when she received a letter in the fall of 1994 requiring her to sign a release. *Id*. at Exhibit 4. As part of that lawsuit, USAir agreed to change its weight policy to a performance-based policy in order to comply with Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. (Title VII).

Skonieczny was unable to return to work in the fall of 1994, and she informed USAir she was unable "to medically take the Performance Test" as requested by USAir. *Id*. at ¶ 53. Pursuant to the EEOC lawsuit settlement agreement, Skonieczny was placed on weight suspension status as of October 9, 1994. Skonieczny was informed that she would remain on weight suspension until she could complete the performance test. Skonieczny passed the performance test in early 1995, but was still unable to return to work due to medical issues she was experiencing.

Skonieczny formally applied to USAir for long-term disability (LTD) benefits on May 5, 1995, stating that "she had been disabled due to 'panic disorder with agoraphobia and depression disorder [not otherwise specified (NOS)]' since September 1994." U.S. District Court Opinion in C.A. No. 97-2357, 11/18/1998, at 5. On October 3, 1995, USAir sent a letter to Skoneiczny conceding that she was disabled, but concluded she was entitled to zero dollars in LTD benefits. USAir reached this conclusion based on the section 22.F.3 of the USAir Flight Attendant Agreement, which provided that the "monthly [LTD] benefit shall be based on the previous year's gross salary divided by the number of months actually worked." *Id*. Skonieczny did not earn any salary in 1994 due to her being on maternity leave; thus, according to USAir, she was not eligible for any disability compensation even though she was disabled.

Thereafter, Skonieczny, through her union, the Association of Flight Attendants (AFA), filed a grievance against USAir.[3] Additionally, on April 25, 1996, Skonieczny *pro se* notified the EEOC of discrimination claims against USAir. The EEOC conducted a telephone inquiry, and sent a charge of discrimination form to Skonieczny. Skonieczny filled out, signed, and returned the form. Skonieczny checked the box on the form indicating that she believed USAir was violating her rights pursuant to the Americans with

---

[3] Counsel from the AFA represented Skonieczny with respect to the grievance process.

Disability Act of 1990 (ADA). On September 30, 1997, the EEOC sent Skonieczny a right-to-sue letter.

In October 1997, Skonieczny first consulted with Appellees about these claims. On December 29, 1997, Appellees filed a lawsuit against USAir in the U.S. District Court for the Western District of Pennsylvania on Skonieczny's behalf (C.A. No. 97-2357). In her complaint, Skoneiczny alleged claims for violations of Title VII, the ADA, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. (PHRA). In addition, Appellees sent a letter to Skonieczny, which stated the following.

> With regard to the merits of this matter, we do have significant obstacles for success. Obviously, if you win the arbitration case based on the union contract and past practice, this case is moot. You cannot collect more than the long term disability benefits. If you lose the arbitration, we are left with a "discrimination" argument instead of the union contract. However, I am concerned because the only charge you filed with the EEOC is … [an ADA] charge. Quite frankly, this is not an ADA case. In fact, [USAir] admits you are disabled. If anything, this is a sex discrimination or retaliation case under Title VII of the Civil Rights Act. Unfortunately, no charge was ever filed with the EEOC on these issues.
>
> In any event, we will see what develops.

Amended Complaint, 5/25/2012, at Exhibit 44.

On February 25, 1998, Skonieczny received a letter from the AFA attorney informing her that her grievance was "without legal merit" and that it would withdraw "the case from arbitration before the Flight Attendant Retirement Board." *Id*. at Exhibit 26. Skonieczny informed Appellees of this development.

- 5 -

On November 18, 1998, the district court ruled on USAir's motion to dismiss, and dismissed all of Skonieczny's claims except for those under Title VII and the PHRA where the claims involved alleged discrimination on the basis of her gender (sex discrimination claims). USAir then moved for summary judgment with respect to the sex discrimination claims. Appellees, on behalf of Skonieczny, did not file a response to that motion.

On September 15, 1999, the district court granted summary judgment in favor of USAir, holding that Skonieczny failed to exhaust her administrative remedies. Specifically, it concluded that "the actions of [USAir] that underlie [Skonieczny's] Title VII sex discrimination claim are neither fairly within the scope of [Skonieczny's] EEOC charge nor within the scope of the EEOC's investigation arising therefrom." U.S. District Court Opinion in C.A. No. 97-2357, 11/18/1998, at 8. Additionally, the district court granted summary judgment with respect to her PHRA-based sex discrimination claims because she never filed a charge with the PHRC to exhaust her administrative remedies.

On September 13, 2001, Skonieczny *pro se* filed a praecipe for writ of summons against Appellees. On September 15, 2003, Skonieczny, through counsel, filed a complaint against Appellees which included claims sounding in legal malpractice.[4]

---

[4] "[A] legal malpractice action in Pennsylvania requires the plaintiff to prove that [s]he had a viable cause of action against the party [s]he wished to sue in the underlying case and that the attorney [s]he hired was negligent in

After years of litigation, including an appeal to this Court,[5] Appellees filed an answer and new matter to Skonieczny's amended complaint on November 29, 2012. A jury trial commenced on March 28, 2016.

At trial, Skonieczny presented Attorney John Quinn as her expert to testify about how Appellees' representation of Skonieczny in her efforts to pursue LTD benefits fell below acceptable professional standards. Quinn testified about three areas he researched with respect to Appellees' representation of Skonieczny. First, Quinn assessed Appellees' "handling of the federal court action which [] Cooper filed on [Skonieczny's] behalf in response to a right-to-sue letter that [] Skonieczny had received." N.T., 3/30/2016, at 328. Quinn also assessed whether "there was any other action that could be taken relative to her LTD plan that was mired in the administrative process with the flight attendant union versus USAir." *Id*. at 328-29. Finally, and according to Quinn, least important, Quinn assessed "whether there was any breach of duty of fair representation on the part of the union that may have been actionable and upon which [] Cooper should have acted or steered [] Skonieczny to other counsel." *Id*. at 329.

Quinn concluded that Appellees' representation in all three areas "fell below accepted standards." *Id*. According to Quinn, Skonieczny's ADA

---

prosecuting or defending that underlying case (often referred to as proving a 'case within a case.')." ***Myers v. Robert Lewis Seigle, P.C.***, 751 A.2d 1182, 1184 (Pa. Super. 2000).

[5] The relevant details surrounding this stage of the proceedings will be discussed *infra*.

claims in district court could have been successful had Appellees raised certain arguments with respect to a Third Circuit decision. With respect to Skonieczny's claims relative to the LTD plan, Quinn opined that Appellees should have filed an action pursuant to the Employee Retirement Income Secured Act (ERISA).[6] According to Quinn, "Cooper should have recognized that there really had been no final decision by an administrator on this claim. The Retirement Board never made a decision because … [the union] yanked the claim from consideration." *Id*. at 336. Appellees either should have filed this claim or "advise[d] [] Skonieczny of her right to file it." *Id*. at 337. In addition, Quinn testified that the fact that the "same Plan had been interpreted before to allow her to use her last year of real earnings in determining what her LTD benefit would be" would have permitted it to be interpreted in that manner again. *Id*. at 338. Finally, Quinn opined that Appellees' representation of Skonieczny fell below accepted standards with respect to the fair representation claim because he did not advise her of the relatively short statute of limitations of only six months to bring such a claim. *Id*. at 342.

In response, Appellees called Attorney Ernest B. Orsatti to testify as their expert. According to Orsatti, "any kind of ERISA lawsuit would have been frivolous" under these circumstances. *Id*. at 514. He testified that in

---

[6] "ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." ***Barnett v. SKF USA, Inc.***, 38 A.3d 770, 776 (Pa. 2012) (quotation marks omitted).

order for Skonieczny to prevail on her ERISA claim, she would have had to show that the "decision denying benefits was arbitrary" and this was not this case in this matter. *Id*. at 512. With respect to the 1992 benefit decision, Orsatti testified that "[j]ust because a fund makes a mistake or does something once or twice, that doesn't give rise to an obligation on their part to do that forever." *Id*. at 515. Additionally, Orsatti testified that Skonieczny would not have prevailed on her ADA claim. *Id*. at 524. Finally, he testified that Skonieczny would not have prevailed on her breach of fair representation claim. Accordingly, Orsatti testified that Appellees' representation of Skonieczny fell within acceptable professional standards.

After both Skonieczny and Appellees presented their cases, Appellees moved for a directed verdict. The trial court offered the following.

> [I]t is this [c]ourt's opinion that in order to recover damages for a lawyer malpractice claim, [Skonieczny] must establish each of three elements. And those elements were: The employment of [Appellees] for a specific undertaking by that lawyer to furnish legal advice or assistance to [Skonieczny] and that [Appellees were] negligent in failing to possess and exercise the ordinary skill, knowledge, care, normally possessed and exercised by members in good standing in the legal profession, and such negligence caused [Skonieczny] to lose a cause of action on which [she] would have recovered judgment. This [c]ourt has determined that the third element was not met.
>
> ***
>
> I will dismiss this case and release the jury.

*Id*. at 605-606. In other words, the trial court concluded that Skonieczny failed to convince the trial court that she would prevail on her "case within a

case." **Myers**, 751 A.2d at 1184. Thus, the trial court directed a verdict in favor of Appellees and dismissed this case by entering a non-jury verdict.

Skonieczny *pro se* filed post-trial motions, and on July 13, 2016, the trial court denied post-trial relief. After the entry of judgment, Skonieczny appealed.[7] Both Skonieczny and the trial court complied with Pa.R.A.P. 1925.

On appeal, Skonieczny first challenges two pre-trial orders concerning preliminary objections.[8] **See** Skonieczny's Brief at 2-16. By way of background, Skonieczny filed her complaint sounding in legal malpractice on September 15, 2003. On November 18, 2003, Appellees filed a praecipe for entry of judgment of *non pros* "based upon Skonieczny's failure to file a certificate of merit within 60 days of filing her complaint pursuant to Pa.R.C.P. 1042.3." **Skonieczny v. Cooper**, 37 A.3d 1211, 1212 (Pa. Super. 2012). The Prothonotary entered a judgment of *non pros* that day.

---

[7] Skonieczny filed three notices of appeal in this case, one for each of the three orders she was challenging. On August 25, 2016, this Court *sua sponte* dismissed two of the appeals as duplicative and consolidated the issues as being preserved for appeal under the instant docket number.

[8] Arguably, Skonieczny has waived these issues by failing to include them in her motion for post-trial relief. **See** Pa.R.Crim.P. 227.1(b)(1)-(2) ("[P]ost-trial relief may not be granted unless the grounds therefor … were raised in pre-trial proceedings [and] are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds."). Appellees have not raised the issue of waiver, and out of an abundance of caution, we address these issues on the merits.

Skonieczny filed a petition to strike the judgment of *non pros*, and the trial court denied that petition. Skonieczny appealed to this Court. On February 12, 2012, this Court reversed the order of the trial court, holding that because Skonieczny filed a praecipe for writ of summons in this case prior to the enactment of Pa.R.C.P. 1042.3, she was not required to file a certificate of merit with her complaint, even though the complaint was filed after the enactment of the rule. **See Skonieczny**, 37 A.3d at 1214 (holding that Skonieczny commenced this action within the meaning of the rule when she filed her praecipe for writ of summons on September 13, 2001).

After remand, on March 12, 2012, the parties entered into an agreement providing that Appellees had until "March 29, 2012 to file an answer or preliminary objections to [Skonieczny's] complaint." Agreement Under Rule 237.2, 3/12/2012 (unnecessary capitalization omitted). On March 28, 2012, Appellees filed preliminary objections. Skonieczny then filed preliminary objections to the preliminary objections arguing, in part, that Appellees were not entitled to file a second set of preliminary objections.[9] On April 30, 2012, the trial court overruled the preliminary objections to preliminary objections. On the same day, the trial court

---

[9] Pa.R.C.P. 1028(b) provides that "[a]ll preliminary objections shall be raised at one time." According to Skonieczny, Appellees' praecipe for entry of judgment of *non pros* was a preliminary objection; thus, Appellees should not be permitted to file this second set of preliminary objections to the extent that those preliminary objections could have been raised at the time Appellees filed the praceipe for entry of judgment of *non pros*.

granted the Appellees' preliminary objections in part. On May 25, 2012, Skonieczny filed an amended complaint.

In this appeal, Skonieczny argues that her preliminary objections to preliminary objections should have been sustained. Specifically, she contends that Appellees' filing of a praecipe for entry of judgment of *non pros* is akin to the preliminary objection of "failure to conform to rule of court … within the meaning of Pa.R.C.P. 1028(a)(2)." Skonieczny's Brief at 3-4. Thus, she suggests the preliminary objections filed after remand were "[i]mpermissible serial preliminary objections" and the only preliminary objections available to Appellees were those that could not have been raised initially. ***Id***. at 4, 11. Skonieczny goes on to argue that these serial preliminary objections were a "nullity." ***Id***. at 6. Accordingly, she suggests that "judgment by default should have been appropriately entered." ***Id***. at 12-13.

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

***Richmond v. McHale***, 35 A.3d 779, 783 (Pa. Super. 2012).

With respect to the relationship between praecipe to enter a judgment of *non pros* for failure to file a certificate of merit and preliminary objections, we have held that "the filing of preliminary objections is irrelevant when the plaintiff has set forth a professional negligence claim and it is his duty to

- 12 -

obtain a valid certificate of merit within sixty days of filing the complaint." ***Ditch v. Waynesboro Hosp.***, 917 A.2d 317, 325 (Pa. Super. 2007). Thus, it is clear that the rules for a praecipe for entry of judgment of *non pros* and the filing of preliminary objections are distinct and not dependent in any way on one another. Accordingly, even though this Court determined that Appellees were not permitted to file a praceipe for entry of judgment of *non pros* under these circumstances, we cannot agree that by doing so, they waived their rights to file a set of preliminary objections. Accordingly, Skonieczny is not entitled to relief on this basis.

In addition, Skonieczny presents an argument suggesting her constitutional rights were violated by the serial preliminary objections. Skonieczny's Brief at 13. This argument was not raised in the trial court. Thus, it is waived. ***See*** Pa.R.A.P 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

We now turn to Skonieczny's arguments with respect to the directed verdict entered in favor of Appellees. ***See*** Skonieczny's Brief at 18-35. At this juncture, Skonieczny has voluntarily narrowed her issues on appeal to those related to her ERISA claim. ***See id*** at 19 ("[Skonieczny] has attempted to narrow the issue on appeal to her ERISA claim, not because she could not have proved the many complex convoluted facets of the underlying federal case but to simplify matters and reach the heart of the issue."). We consider these issues mindful of the following.

J-A01044-17

> In reviewing a trial court's decision to direct a verdict in favor of a defendant, we must view the evidence presented in the light most favorable to plaintiff and determine whether plaintiff failed to prove his case as a matter of law. If a jury could have reasonably concluded on the basis of the evidence and all reasonable inferences therefrom that liability should rest with the appellee, then the decision to direct a verdict must be reversed. In examining the trial court's determination to direct verdict, our standard of review is plenary, as it is with any review of questions of law.

*Riley v. Warren Mfg., Inc.*, 688 A.2d 221, 224 (Pa. Super. 1997) (citations omitted).

In considering whether Skonieczny had a viable ERISA claim, we bear in mind the following. "Section 502(a)(1)(B) of ERISA allows a participant to bring a claim to recover benefits due to him under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B)." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011).

> Courts must review an ERISA administrator's actions *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case review is under the arbitrary and capricious standard. The key, then, lies in determining whether a plan provides an administrator with such discretion.

*Evans v. Sodexho*, 946 A.2d 733, 744 (Pa. Super. 2008) (internal quotation marks omitted). Here, all parties agree that the LTD benefit plan at issue gave the benefits administrator discretionary authority. "An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Miller*, 632 F.3d at 845 (internal quotation marks omitted).

- 14 -

In concluding that Skonieczny was entitled to zero dollars for her LTD benefit, the letter sent to Skonieczny by benefits administrator, Janet Fields, provided the following:

> Section 22.F.3 of the USAir Flight Attendant Agreement states, "The monthly benefit shall be based on the previous year's gross salary divided by the number of months actually worked." Therefore, since you have not earned any salary in 1994 you are not eligible to receive any [LTD] compensation.

Amended Complaint, 5/25/2012, at Exhibit 13.[10]

According to Skonieczny, the language "previous year's gross salary" is defined in the LTD plan. She contends that language required USAir "to use a participant's W-2 in the participant's preceding tax year which is the participant's last active year." Skonieczny's Brief at 34 (unnecessary capitalization omitted). Thus, Skonieczny suggests the previous year as it applied to her, was the last year in which she was actively earning a salary. Accordingly, Skonieczny contends that the decision of Janet Fields not to apply that year was arbitrary and capricious.

At trial, Skonieczny testified as follows.

> My understanding was that USAir was required to determine my disability benefits based on my average monthly earnings. And according to the -- my understanding, according to the provisions of the Plan and how they interpreted it in 1992, when I didn't have any previous year's salary, they went to my last active year when I had a W-2, in order to determine what my average monthly earnings were because the disability benefits were based on 60 percent of your average monthly

---

[10] The quoted passage is actually from section 22.F.4. **See** Amended Complaint, 5/25/2012, at Exhibit 27. This was confirmed by Janet Fields during her deposition. N.T., 3/14/2016, at 16.

earnings. And that's how the 1992 Retirement Board determined my benefits in 1992. So it was identical circumstances in 1994. I had no previous year's salary because USAir placed me on weight suspension and everything was identical. So I didn't understand the difference. There was no difference.

\*\*\*

Since the onset of everything can be attributed to the weight suspension, I believe the benefits should be based on the previous year's wages of the initial weight suspension year, in which case, I earned wages.

N.T., 3/29/2016, at 151-53.

Fields testified about how she reached the decision that Skonieczny was entitled to zero dollars in LTD benefit. She testified that "USAir interpreted that language to require flight attendants to have wages in the year previous to the date benefits commence." N.T., 3/14/2016, at 19. With respect to Skonieczny receiving an LTD benefit in 1992, when she had not earned wages in 1991, Fields testified that it was "an honest mistake." *Id*. at 37. However, she testified that other than Skonieczny's situation in 1992, she was not aware of any other flight attendant who received LTD benefits who had not actually earned wages the prior year. *Id*. at 40.

Based on the foregoing, we conclude the trial court did not err in finding that Fields's determination was neither arbitrary nor capricious. She applied the clear and unambiguous[11] language found in the plan with respect to "previous year's gross salary divided by the number of months actually

_____

[11] Skonieczny concedes the language of the plan is unambiguous. **See** Skonieczny's Brief at 31 ("[Skonieczny] has never asserted that the LTD Plan language was ambiguous.").

worked." Amended Complaint, 5/25/2012, at Exhibit 27. Because Skonieczny did not work any months during 1994, she was not entitled to collect an LTD benefit under this plan.

Moreover, it is evident that the testimony of Skonieczny's expert, Quinn, could not be presented to a jury under these circumstances. His primary rationale for opining that Skonieczny had a viable ERISA claim was based upon the fact that Skonieczny had received benefits under the same plan in 1992. However, in **Shopmen's Local Union 527 Pension & Benefit Funds v. T. Bruce Sales**, 2007 WL 649277, at *1 (W.D. Pa. Feb. 6, 2007), the same District Court that granted summary judgment in favor of U.S.A.ir held that there is "no case holding an employee who is unambiguously ineligible for benefits under the terms of an ERISA plan can nonetheless receive that benefit because the administrator granted it to other ineligible participants."[12] Thus, Quinn erred as a matter of law in rendering his expert opinion.

Accordingly, Skonieczny could not have prevailed had Appellees filed a lawsuit utilizing an ERISA claim. Thus, we agree with the trial court that

---

[12] **See Vitale v. Latrobe Area Hosp.**, 420 F.3d 278, 286 (3d Cir. 2005) ("Where an ERISA plan mandates a denial of benefits, the mere fact that administrators have in the past granted benefits is no reason to impose a straightjacket requiring them to do so forever. Both the clear requirements of ERISA and obvious reasons of policy suggest that administrators should be allowed to correct their mistakes and deny benefits to those participants who are not eligible for them under the unambiguous terms of their plan.").

Skonieczny failed to establish the elements of a legal malpractice claim on this basis.

Having concluded that Skoniezcny has presented no issue on appeal entitling her to relief, we affirm the judgment.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/28/2017